**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

UNITED STATES OF AMERICA

v.

LARRY WEBMAN,
RANDY WEBMAN,
DARA WEBMAN,
GEORGE WILLIAMS,

               Defendants.

CRIMINAL CASE NO.

1:13-CV-0025-SCJ-JFK

## ORDER AND REPORT AND RECOMMENDATION

Pending before the court are Defendant Randy Webman's motion [Doc. 91] to

dismiss the indictment or, in the alternative, to strike surplusage or to preclude the jury

from access to the indictment, as adopted [Doc. 98] by Defendant Larry Webman, and

Defendant Randy Webman's motion [Doc. 93] for a bill of particulars, as adopted [Doc.

97] by Defendant Larry Webman.  Also pending before the court is Defendant George

Williams' motion [Doc. 89] for severance of Defendants pursuant to Fed. R. Crim. P.

14.  The Government filed responses opposing the motions to dismiss/strike and for

severance [Docs. 104, 106] and responded to the bill of particulars that the requested

information had been provided in discovery [Doc. 105].  Defendants Randy and Larry

Webman replied agreeing that the requested information had been provided. [Doc. 112]. Accordingly, the court **GRANTS** the motions [Docs. 93, 97] for a bill of particulars and finds that the Government has provided the information sought as outlined in the Government's response to the bill of particulars. Remaining pending before the court are the motions to dismiss/strike and to sever Defendants.

## Motions Dismiss/Strike

Larry and Randy Webman contend that the indictment contains surplusage which offends Fed. R. Crim. P. 7(c) in that the indictment alleges evidentiary detail not necessary to inform Defendants of the charges, and Defendants assert that, without the offending and prejudicial language, the indictment is sufficient to allege the offenses charged therein. [Doc. 91 at 1-3]. Defendants seek dismissal of the indictment due to the inclusion of the surplus and allegedly prejudicial language or, in the alternative, that the language be stricken from the indictment pursuant to Fed. R. Crim. P. 7(d) or that the indictment not be read or presented to the jury. [Doc. 91]. Defendants contend that Count One of the indictment, alleging a drug conspiracy, which does not require proof of an overt act, contains surplusage in that paragraphs 13-27 and the phrase "outside the course of professional medical practice and for other than a legitimate medical purpose," found throughout Count One, are not necessary to sufficiently allege a

2

violation of 21 U.S.C. § 846. [Doc. 91 at 12-13]. With respect to Counts Two through Five, alleging distribution of controlled substances, Defendants contend that incorporation of paragraphs 1-11 of Count One and the phrase "outside the course of professional medical practice and for other than a legitimate medical purpose" are surplusage and not necessary to sufficiently allege a violation of 21 U.S.C. § 841. [Id. at 13]. With respect to Count Six, alleging drug distribution within 1000 feet of a public high school, Defendants contend that incorporation of paragraphs 1-11 of Count One and paragraph 29 of Count Two and inclusion of the phrase "outside the course of professional medical practice and for other than a legitimate medical purpose" are surplusage and not necessary to sufficiently allege a violation of 21 U.S.C. § 860(a)(1). [Id.]. Finally, as to Count Seven, alleging that Defendants maintained a place for the purpose of distributing controlled substances, Defendants contend that incorporation of paragraphs 1-9 of Count One and the phrase "outside the course of professional medical practice and for other than a legitimate medical purpose" are surplusage not necessary to sufficiently allege a violation of 21 U.S.C. § 856(a)(1). [Id. at 13-14]. The Government responded that Defendants failed to state any basis upon which dismissal of the indictment is appropriate and that Defendants in fact acknowledged that the indictment met Rule 7(c) pleading requirements. The Government further argued that

Defendants failed to demonstrate that the language Defendants seek to strike from the indictment is not relevant to the charges and that inclusion of the information in the indictment is inflammatory and prejudicial. [Doc. 104]. In reply, Defendants repeat the arguments made in support of the motion. [Doc. 111].

## I.   The Indictment

Count One of the indictment alleges that Defendants Larry, Randy and Dara Webman, who are not medical practitioners, along with Defendant George Williams, who is a medical practitioner, licensed to practice in the State of Georgia and to prescribe controlled substances by the Drug Enforcement Administration ("DEA"), from no later than February 2012 through January 22, 2013, when the indictment was filed, conspired to distribute a variety of controlled substances as described in the indictment, in violation of 21 U.S.C. § 846. [Doc. 1, Count One, ¶¶ 1-12]. The parts of Count One labeled "Introduction" and "The Agreement" set out background information on the Controlled Substances Act ("CSA"), including the schedules of controlled substances and a description of the substances allegedly distributed as part of the charged conspiracy. "The Introduction" section further explains authorization for distribution of controlled substances by licensed practitioners as set forth in 21 C.F.R. Section 1306, including that such practitioners "cannot issue a prescription for

4

a controlled substance unless it is 'issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice'" and that any prescription not falling within this description subjects the individual issuing it or filling it to the penalties of Title 21.  [Id., ¶¶ 1-8].  The next section labeled "Defendants" provides identification information, including that Defendant George Williams is a licensed practitioner authorized to issue prescriptions for controlled substances.  [Id., ¶¶ 8-11].

After setting forth "The Agreement" [Id., ¶ 12], that is, the alleged conspiracy, the indictment provides information about the "Nature and Purpose of the Drug Conspiracy" and the "Manner and Means of the Drug Conspiracy."  [Id., ¶¶ 13-27]. These paragraphs describe how Defendants allegedly operated the pain clinic and the reasons the Government contends Defendants Webman, who were not licensed practitioners, conspired with Defendant Williams, a licensed practitioner, in the operation of a pain clinic, to illegally dispense large amounts of controlled substances. [Id.].

Counts Two through Five of the indictment allege violations of 21 U.S.C. § 841, the illegal distribution of controlled substances on October 4 and November 2, 2012. In addition to alleging that Defendants knowingly and intentionally distributed and

5

dispensed the controlled substances, aided and abetted by one another, these counts allege that the distribution occurred "by causing prescriptions to be issued for the controlled substances, outside the course of professional medical practice and for other than a legitimate medical purpose . . . ." [Id., 29]. And these counts incorporated the previous paragraphs labeled "The Introduction" and "Defendants." [Id., ¶ 28].

Count Six of the indictment charges Defendants with a violation of 21 U.S.C. § 860(a)(1), that is, distributing or dispensing the controlled substances identified in Counts Two through Five, with that paragraph [Id., ¶ 29] being incorporated by reference, within 1000 feet of a public high school. [Id., ¶ 31]. That count also incorporates paragraphs 1-11 labeled "The Introduction" and "Defendants" as well as stating that the distribution and dispensing occurred "by causing prescriptions to be issued for the controlled substances, outside the course of professional medical practice and for other than a legitimate medical purpose . . . ." [Id., 31]. And Count Seven charges Defendants Larry and Randy Webman with a violation of 21 U.S.C. § 856(a)(1), that is, maintaining a place, the pain clinic, for the purpose of distributing controlled substances "outside the course of professional medical practice and for other than a legitimate medical purpose . . . ." . [Id., ¶ 33]. The count also incorporates by reference paragraphs 1-9 labeled "The Introduction." [Id., ¶32].

Additional facts will be set forth as necessary in addressing the motions to dismiss/strike.

## II.    Discussion

Citing Fed. R. Crim. P. 7(c) and 7(d), Defendants first move that the indictment be dismissed because of the inclusion of the allegedly surplus language. [Doc. 91 at 14-16; Doc. 111 at 3]. Rule 7(c) provides in pertinent part:

> The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government. It need not contain a formal introduction or conclusion. A count may incorporate by reference an allegation made in another count. A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. For each count, the indictment . . . must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated. . . .

Fed. R. Crim. P. 7(c) (as amended 2009). And Rule 7(d) provides that, "Upon the defendant's motion, the court may strike surplusage from the indictment . . . ." Fed. R. Crim. P. 7(d) (as amended 2009).

Taking into account Rule 7(c)'s requirements, "the Eleventh Circuit has previously described as legally sufficient an indictment that (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended

7

AO 72A
(Rev.8/82)

against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." United States v. Perraud, 672 F. Supp. 2d 1328, 1345 (S.D. Fla. 2009) (quoting United States v. Jordan, 582 F.3d 1239, 1245 (11th Cir. 2009)) (internal quotation marks omitted).  Accordingly, "if the indictment tracks the language of the statute, it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged."  Id. (quoting United States v. Bobo, 344 F.3d 1076, 1083 (11th Cir. 2003)) (internal quotation marks omitted); and see United States v. Hill, 2010 WL 128314, at *2 (N.D. Ga. January 13, 2010) (same).  In judging the sufficiency of an indictment, courts are cautioned to use a "broad and enlightened standpoint of common sense and right reason rather than [a] narrow standpoint of petty preciosity, pettifogging, technicality or hair splitting fault finding."  Perraud, 672 F. Supp. 2d at 1345 (citations and internal quotation marks omitted); and see Hill, 2010 WL 128314, at *3 ("[w]hen analyzing challenges to the sufficiency of an indictment, courts give the indictment a common sense construction, and its validity is to be determined by practical, not technical considerations") (citation and internal quotation marks omitted).

8

As the Government points out, Defendants are not really challenging the sufficiency of the indictment.  [Doc. 104 at 3].  In fact, Defendants contend that the indictment contains more information than necessary to satisfy Rule 7(c)'s requirements and that the counts in the indictment would state the charges with the challenged language omitted.  [Doc. 91 at 12-14].  However, the fact that the indictment may contain a surplus of information, not required under Rule 7(c), does not provide grounds for dismissal.  In this situation, a "motion to strike the surplusage, rather than dismissal of the entire count, is the appropriate remedy."  United States v. Goodman, 285 F.2d 378, 379 (5th Cir. 1960);[1] accord United States v. Smallwood, 2011 WL 2784434, at *2 (N.D. Tex. July 15, 2011) ("even if an indictment is lengthy and needlessly verbose, Rule 7(c) does not mandate that it be dismissed[,]" instead, "the defendant's proper recourse is to file a motion to strike surplusage from the indictment"); United States v. Watson, 2008 WL 3256662, at *2 (M.D. Ga. August 5, 2008) ("a motion to strike surplusage, rather than a motion to dismiss indictment, is the proper vehicle to remedy prejudicial language contained in an indictment").  Based on this legal authority, and because Defendants have not alleged that the indictment fails

---

[1]Decisions of the Fifth Circuit rendered before October 1, 1981, are binding upon panels of the Eleventh Circuit.  See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

9

to properly notify them of the charges being brought against them, the court recommends that the motion to dismiss be denied.

Turning to the motion to strike, as noted, Fed. R. Crim. P. 7(d) "authorizes the Court to strike surplusage from an indictment on motion of the defendant." However, as pointed out by the Government, "[a] motion to strike surplusage from an indictment should not be granted unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial. . . .  [T]his is a most exacting standard." United States v. Awan, 966 F.2d 1415, 1426 (11th Cir. 1992) (citations and internal quotation marks omitted); accord United States v. Brye, 318 Fed. Appx. 878, 880 (11th Cir. 2009) (same); Smallwood, 2011 WL 2784434, at *10 ("the court will not strike allegations that are *relevant*, no matter how prejudicial or inflammatory they may be to the defendant") (emphasis in original).  And, in order to determine whether the allegations are relevant to the charges and the evidence introduced at trial, "[t]he Court may reserve ruling on a motion to strike surplusage until hearing the evidence and determining its relevance at trial."  United States v. Al-Arian, 308 F. Supp. 2d 1322, 1333 (M.D. Fla. 2004).

Defendants seek to strike all references in the indictment to the phrase "by causing prescriptions to be issued for the controlled substances, outside the course of

10

professional medical practice and for other than a legitimate medical purpose . . ." [Doc. at 12-14] without providing any reasons except to generally contend that the surplus "language is not relevant to explaining the essential facts constituting any of the . . . charged offenses" and to claim, without specifically addressing why, that this language "is clearly prejudicial" [Id. at 14-15]. The court does not agree.

To convict Defendants of violating the various provisions of Title 21 in this case, "the prosecution must 'prove that [they] dispensed [or conspired to do so or aided and abetted in doing so] controlled substances for other than legitimate medical purposes in the usual course of professional practice, and that [they] did so knowingly and intentionally.'" United States v. Joseph, 709 F.3d 1082, 1102 (11th Cir. 2013) (citation omitted); and see United States v. Rosen, 582 F.2d 1032, 1033 (5th Cir. 1978) (the government must "prove (1) that [defendant] distributed or dispensed a controlled substance, (2) that he acted knowingly and intentionally, and (3) that he did so other than for a legitimate medical purpose and in the usual course of his professional practice"). And, even though the Eleventh Circuit Court of Appeals has held "that an indictment of a practitioner for violation of 21 U.S.C. § 841 does not have to contain an averment that the defendant distributed a controlled substance outside the usual course of professional practice and not for a legitimate medical purpose" in order to

11

satisfy Rule 7(c), citing <u>United States v. Steele</u>, 147 F.3d 1316 (11th Cir. 1998), this fact does not require striking that allegation when set forth in an indictment.  <u>United States v. Kelley</u>, 2009 WL 2176347, at *1, *3 (S.D. Ala. July 17, 2009) ("Contrary to the defendants' argument, the court does not believe that it necessarily follows that because such language is not required, it is therefore prohibited[, and t]he court is aware of no precedent (and defendants have cited none) that would prevent the indictment from giving notice to the accused that the government intends to rebut a defense based on the 'usual course of professional practice' exception.").  The challenged language "goes directly to the third element" of the offenses charged in this case and is relevant to the proof that the Government must offer at trial.  <u>United States v. Vogel</u>, 2010 WL 2465359, at **2-3 (E.D. Tex. May 21, 2010) (finding that inclusion of the language "outside the scope of professional practice and not for a legitimate medical purpose" should not be stricken from the indictment).

As to the "Nature and Purpose of the Drug Conspiracy" and "Manner and Means of the Drug Conspiracy" averments in Count One of the indictment, Defendants apparently argue that this language is surplusage that must be stricken because 21 U.S.C. § 846 does not require proof of an overt act.  [Doc. 91 at 5-6].  Otherwise, Defendants make the same general and conclusory assertions that the surplus "language

12

is not relevant to explaining the essential facts constituting any of the . . . charged offenses" and to claim, without specifically addressing why, that this language "is clearly prejudicial" [Id. at 14-15]. Again, the court does not agree.

The only specific argument in support of striking these sections from the indictment is based on the fact that § 846 does not require proof of an overt act and, therefore, that the Government is not required to allege in the indictment any conduct by Defendants. [Doc. 91 at 5-6]. The fact that the Government is not required to include the challenged language, arguably indicating it is surplusage, does not carry Defendants' burden of establishing that the averments are not relevant to the facts the Government may prove at trial or, if that burden is met, establishing that the averments are inflammatory and prejudicial. See Kelley, 2009 WL 2176347, at *2 (noting that in order to prevail on a motion to strike, a defendant "must first show that the allegations are not relevant to the charges" and "[t]hen, if that burden is met, . . . must show that the challenged language is unfairly prejudicial and inflammatory").

In United States v. Alexander, 2008 WL 2130185 (W.D. La. May 18, 2008), the district court addressed a similar challenge to a drug conspiracy charge filed pursuant to § 846 which included averments under headings labeled "Object of the Conspiracy," "Ways and Means of Accomplishing the Conspiracy," and "Overt Acts." The

defendants contended that these sections were "'not essential to the charge and [were] highly prejudicial.'" Id., at *1 (citation omitted). The court noted "the mere fact that information in an indictment does not constitute an element of the charged offense does not require that it be stricken[,]" and the court found that it should not be stricken if it is admissible and relevant to the charge. Id., at *2. The court stated that, while Rule 7(c) "requires that the indictment contain the essential facts constituting the offense, that does *not* mean that all other language should be stricken from the indictment." Id., at *3 (emphasis in original). Rule 7(c), in fact, provides that the indictment "may allege that . . . the defendant committed the offense . . . by one or more specified means." Fed. R. Crim. P. 7(c).

The paragraphs that Defendants seek to strike [Doc. 1, Count One, ¶¶ 13-27] set forth how the Government contends Defendants allegedly operated the pain clinic and the reasons the Government contends Defendants Larry, Randy and Dara Webman, who were not licensed practitioners, conspired with Defendant Williams, a licensed practitioner, in the operation of a pain clinic in order to illegally dispense large amounts of controlled substances for other than legitimate medical purposes. Based on the court's understanding of the charged conspiracy offense, and after review of cases

14

charging registrants and non-registrants with violations of the CSA,[2] it appears that the conduct alleged in the indictment is relevant to the determination of whether Defendants conspired to unlawfully dispense controlled substances.  It is well-settled that allegations in support of a charged conspiracy offense do not have to set forth illegal activity nor, for that matter, be restricted to stating elements of the offense, in order to be relevant and material.   See Smallwood, 2011 WL 2784434, at *9 ("Although an indictment *need not* set forth the evidentiary details of the offenses charged, . . . there is no *prohibition* against pleading 'evidentiary allegations[.]'") (citation not provided; emphasis in original); Al-Arian, 308 F. Supp. 2d at 1357 ("This Court has reviewed the allegations in the subparagraphs and agrees with the government that, while some of the subparagraphs do not contain illegal activity in themselves, each is probative of other issues related to the conspiracies alleged in this case.") (citing, e.g., United States v. Lanier, 920 F.2d 887, 893 (11th Cir. 1991) (overt acts need not be criminal); United States v. Morse, 851 F.2d 1317, 1320 (11th Cir. 1988) (activity alleged in support of conspiracy charge need not be illegal in and of itself);

---

[2] See, e.g., United States v. Ihenacho, 716 F.3d 266, 280-81 (1st Cir. 2013); Joseph, 709 F.3d at 1102-04; United States v. MacKay, 715 F.3d 807, 813-24 (10th Cir. 2013); United States v. Ignasiak, 667 F.3d 1217, 1228-29 (11th Cir. 2012); United States v. Johnston, 322 Fed. Appx. 660, 668 (11th Cir. 2009).

AO 72A
(Rev.8/82)

United States v. LaChance, 817 F.2d 1491, 1494 (11th Cir. 1987) (same)); United States v. Salvagno, 306 F. Supp. 2d 258, 268 (N.D. N.Y. 2004) (rejecting the defendants' motion to strike manner and means paragraphs, which included references to state laws, because the paragraphs described the defendants' "methods of operation-methods that are intertwined with the evidence regarding the charged offense").

As the court stated in Alexander,

> It is clear that the language which the defendant seeks to strike sets out for the jury the way in which the government contends that this conspiracy was to operate and what goals the conspiracy sought to accomplish. The listed overt acts, while not required to be proved for a conviction under § 846, nevertheless set out factual allegations regarding the way in which the conspiracy actually worked. Clearly, the government is entitled to prove, if it can, each and every one of these overt acts. Similarly, the government is entitled to prove what it believes to be the objectives of the conspiracy, and the ways in which the individual defendants attempted to accomplish the objectives of the conspiracy. What this indictment does is to inform the defendants of what the government intends to prove.

2008 WL 2130185, at *3. This analysis is especially pertinent to the conspiracy charge in this case, which requires the Government to prove that Defendants' conspiratorial agreement included causing prescriptions to be written for other than legitimate medical purposes. See Kelley, 2009 WL 2176347, at *2 ("'If the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is

16

legally relevant).") (citation omitted).   Defendants have not established that the challenged allegations are irrelevant to the conspiracy charge much less proved that the allegations are unfairly prejudicial and inflammatory.

With respect to the remaining challenges to the language incorporated into Counts Two through Seven of the indictment, that is, "The Introduction" and "Defendants" [Doc. 1, Count One, ¶¶ 1-11], Defendants move to strike incorporation of this language without any reasoning except to generally contend that the surplus "language is not relevant to explaining the essential facts constituting any of the . . . charged offenses" and to claim, without specifically addressing why, that this language "is clearly prejudicial" [Id. at 14-15].   Again, Defendants have not established (for many of the reasons stated *supra*) that the allegations are irrelevant to the charges and, additionally, are unfairly prejudicial and inflammatory.[3]   The court also agrees with the district court in Kelley, which in addressing a conclusory motion to strike, stated: "[T]he defendants, without any specificity, argue that these paragraphs contain immaterial, irrelevant, argumentative, inaccurate, and conclusory language that is

---

[3]In fact, given that Defendants did not challenge inclusion of this language as surplusage in Count One [Doc. 91 at 12-13], the court simply does not find that repeating - only by incorporation - the same language in Counts Two through Seven, somehow magically makes the allegations prejudicial and inflammatory in association with Counts Two through Seven.

17

calculated to prejudice the jury. The court does not believe that such a blanket request without more specificity meets the 'exacting standard' required by Eleventh Circuit precedent" to grant a motion to strike. 2009 WL 2176347, at *2. Defendants simply have not established that the motion to strike should be granted.

And Defendants contend that incorporating paragraph 29 into Count Six is unnecessary to allege a violation of 21 U.S.C. § 860(a)(1), that is, distribution of a controlled substance within 1000 feet of a public school. [Doc. 91 at 13]. Paragraph 29, found in Counts Two through Five, merely identifies the four acts of distribution, with the dates of the alleged conduct, that allegedly took place within 1000 feet of the public school. [Doc. 1, Counts Two through Five, ¶ 29]. Without incorporation of that language, Defendants would not be apprised of the dates on which the alleged conduct occurred or what acts of distribution are being referred to in Count Six. This language is not surplusage.

The court finds that the allegedly surplus language in the indictment contains allegations that may be relevant and material to the charged offenses. Because Defendants must prove both that the challenged allegations are not relevant as well as being inflammatory and prejudicial, see Salvagno, 306 F. Supp. 2d at 268 ("[I]f evidence of the allegation is admissible and relevant to the charge, then regardless of

how prejudicial the language is, it may not be stricken.") (citations and internal quotation marks omitted), the court recommends that the motion to strike be denied and that any reconsideration of the motion occur after introduction of the Government's evidence at trial. See Kelley, 2009 WL 2176347, at *2 ("After the court has heard all the evidence, the defendants may make a motion to reconsider this ruling as to specific surplus language that they contend is unfairly prejudicial and inflammatory); Alexander, 2008 WL 2130185, at *4 (noting, to the extent the defendant contends some of the allegations in the indictment are not admissible, the court may address these concerns by summarizing the indictment for the jury, instead of reading it, at the beginning of trial, and to the extent evidence is held inadmissible, related allegations in the indictment can be stricken before the indictment is provided to the jury for deliberations).[4]

---

[4]The Eleventh Circuit Court of Appeals "ha[s] found that a defendant was not unduly prejudiced by language that was not stricken from an indictment where the court provided the jury with only a summary of the indictment that did not include references to the disputed language."  Byre, 318 Fed. Appx. at 880.

## III.   Conclusion

For these reasons, the court **RECOMMENDS** that Defendants' motions [Doc. 91, 98] to dismiss the indictment or, in the alternative, to strike surplusage from the indictment be **DENIED**.

### Motion for Severance of Defendants

Defendant Williams, the licensed practitioner who worked at the pain clinic and issued the prescriptions which the Government contends constituted the illegal distribution and dispensing of controlled substances, seeks pursuant to Fed. R. Crim. P. 14 to have his trial severed from the trial of Defendants Randy and Larry Webman, who are non-registrants and owners and operators of the pain clinic, and Defendant Dara Webman, who is also a non-registrant and the pain clinic's office manager. [Doc. 89]. Defendant Williams contends that he will suffer prejudice at a joint trial because (1) his defense and the defenses of his co-Defendants "are likely to be antagonistic to the point of mutual exclusivity[;]" (2) if he elects not to testify, a co-Defendant may comment on his silence; (3) there is a danger of "spill-over prejudice" due the potential introduction of evidence of other bad acts by his co-Defendants; and (4) there may be <u>Bruton</u> issues due to introduction of statements made by co-Defendants.  [<u>Id.</u> at 3-6]. Defendant also contends that concerns of judicial economy do not require a joint trial

20

in this case.  [Id. at 6-7].   The Government opposes the motion for severance contending that Defendant has not established that a joint trial will unduly prejudice him and that holding separate trials will raise significant judicial economy concerns. [Doc. 106].

## I.   Discussion

The court described the counts in the indictment *supra.*  Defendant is named in a conspiracy charge with his three co-Defendants and in five of the six substantive counts with his three co-Defendants.  [Doc. 1].  The indictment's allegations that Defendant Williams' actions in issuing prescriptions, under circumstances the Government contends demonstrate were not in the usual course of professional practice and not for a legitimate medical reasons, while working at the pain clinic, are the focus of the charges against all Defendants.  [Doc. 1, Count One, ¶¶ 13-27].   The Government's contentions that Defendant Williams' alleged illegal conduct was undertaken with his co-Defendants' support, knowledge and participation are central to the charges of illegal dispensation of controlled substances.  [Id.].  Against these allegations, Defendant seeks a severance.  The court does not find Defendant's arguments persuasive.

21

Defendant seeks a severance based on Fed. R. Crim. P. 14. "Rule 14(a) states, 'If the joinder of . . . defendants in an indictment . . . appears to prejudice a defendant or the government, the court may . . . sever the defendants' trials, or provide any other relief that justice requires.'" United States v. Blankenship, 382 F.3d 1110, 1120 (11th Cir. 2004). The Eleventh Circuit Court of Appeals further has stated, "We have long recognized that 'a District Court confronted with a Rule 14 Motion for Severance is required to balance any . . . prejudice [to the defendants] against the interests of judicial economy, a consideration involving substantial discretion.'" Id. (citation omitted). "In practice, the general rule is that defendants who are jointly indicted should be tried together, particularly in conspiracy cases." United States v. Baker, 432 F.3d 1189, 1236 (11th Cir. 2005); see also United States v. Browne, 505 F.3d 1229, 1268 (11th Cir. 2007) (same). To justify severance, a defendant must show compelling prejudice to the conduct of his defense resulting in fundamental unfairness. See Baker, 432 F.3d at 1236; United States v. Schlei, 122 F.3d 944, 984 (11th Cir. 1997). "'This is a heavy burden, and one which mere conclusory allegations cannot carry.'" United States v. Walser, 3 F.3d 380, 386 (11th Cir. 1993) (quoting United States v. Hogan, 986 F.2d 1364, 1375 (11th Cir. 1993)); see also Browne, 505 F.3d at 1268.

22

As noted, Defendant Williams is charged with a conspiracy to distribute and dispense controlled substances.   It is the general rule in conspiracy cases that "defendants indicted together should be tried together."  United States v. Cassano, 132 F.3d 646, 651 (11th Cir. 1998); see also Browne, 505 F.3d at 1268 (noting that it "is particularly true in conspiracy cases" that persons indicted together be tried together); United States v. Gossett, 877 F.2d 901, 904 (11th Cir. 1989) ("Generally, coconspirators should be tried jointly.").  Although this is not quite an ironclad rule, the "exceptional circumstances justifying a deviation from the rule . . . are few and far between."  United States v. Lopez, 649 F.3d 1222, 1234 (11th Cir. 2011).  In order to overcome this presumption and to establish that severance of Defendants is mandated pursuant to Rule 14, Defendant Williams must not only show specific prejudice but also that "'there is a serious risk that a joint trial would compromise a specific trial right . . ., or prevent the jury from making a reliable judgment about guilt or innocence.'"  Blankenship, 382 F.3d at 1123 (citation omitted).  Additionally, Defendant must demonstrate "that a severance is the only proper remedy for that prejudice - jury instructions or some other remedy short of severance will not work."  Lopez, 649 F.3d at 1234 ("Because limiting instructions usually will cure any prejudice resulting from a joint trial, . . . the Supreme Court has indicated that severances need be granted only if there is a serious risk that

23

a joint trial would either 'compromise a specific trial right of one of the defendants' or 'prevent the jury from making a reliable judgment about guilt or innocence' even if limiting instructions are given.") (citation omitted).

The arguments that Defendant Williams makes regarding potential infringement of a specific trial right by a joint trial in this case do not warrant granting a severance. First, Defendant notes the potential for a Bruton[5] issue if the Government attempts to introduce the statement of a non-testifying co-Defendant.  [Doc. 89 at 6].  However, Defendant does not state that the Government produced any such statements in discovery [Id.], and the Government states that there are no such statements at this time [Doc. 106 at 9].  Accordingly, Defendant has not established that a severance is required on this ground.

Defendant also opines that his and his co-Defendants' defenses "are likely to be" mutually antagonistic due to the fact that his defense will "likely" be that he is just an employee at the pain clinic attempting to treat patients with severe and chronic pain and did not know what the other Defendants were doing that caused the Government to

---

[5]See Bruton v. United States, 88 S. Ct. 1620 (1968).

24

charge the conduct at issue.[6]  [Doc. 89 at 3-4].  While "[t]he assertion of mutually

antagonistic defenses may satisfy the test for compelling prejudice[,] . . . [t]o warrant

severance, defenses must be antagonistic to the point of being irreconcilable or

mutually exclusive." Cassano, 132 F.3d at 652 (citations and internal quotation marks

omitted); see also United States v. Knowles, 66 F.3d 1146, 1159 (11th Cir. 1995)

("[d]efenses can only be found to be antagonistic if the jury, in order to believe the core

of testimony offered on behalf of [one] defendant must necessarily disbelieve the

testimony offered on behalf of his codefendant'") (citations omitted).  The fact that the

evidence of one defendant may inculpate a co-defendant does not mandate severance.

Blankenship, 382 F.3d at 1125-26 (court found that attorney's "vitriolic mudslinging"

against co-defendants and shifting blame to co-defendants did not establish grounds for

severance); United States v. Talley, 108 F.3d 277, 280 (11th Cir. 1997) (finding that the

defendants' defenses, "consisting of claiming to be innocent and accusing the other of

the crime," did not establish mutually antagonistic defenses requiring severance).

Defendant's speculative proffer about what is "likely to be" evidence at trial simply

does not support a finding of mutually antagonistic defenses.  Furthermore, "any

---

[6]In response, the Government points out that it anticipates the evidence introduced at trial will demonstrate, contrary to Defendant's contention, that Defendant Williams was "the majority owner of the clinic."  [Doc. 106 at 5-6].

prejudice resulting from mutually antagonistic defenses could be alleviated by proper limiting instructions." Talley, 108 F.3d at 280 (citing Zafiro v. United States, 113 S. Ct. 933, 939 (1993)); accord United States v. Zaldivar, 292 Fed. Appx. 868, 871 (11th Cir. 2008) (even if prejudice is established by the conflicting defenses presented at trial, "Rule 14 . . . does not mandate that a severance be ordered, but rather permits the court to fashion an appropriate remedy[,]" such as cautionary instructions). Defendant's speculative theories about the defenses at trial simply has not established that mutually antagonistic defenses will be presented at trial or that curative instructions will fail to address his concerns.

And Defendant's one sentence supposition about what might happen if he elects not to testify at trial and if a co-Defendant's attorney comments on his silence, likewise does not establish a right to a severance. [Doc. 89 at 4]. In order for a court to allow counsel for one defendant to comment on the silence of another defendant thereby impairing that defendant's Fifth Amendment right to remain silent and requiring a severance, see DeLuna v. United States, 308 F.2d 140, 141 (5th Cir. 1962), the evidence produced at trial must demonstrate clearly mutually antagonistic defenses. See United States v. Johnson, 713 F.2d 633, 652 (11th Cir. 1983) (noting an attorney's "clear duty" to comment on the silence of a co-defendant "does not arise unless the defenses set

26

forth by the co-defendants are truly antagonistic"). In United States v. Graziano, 710

F.2d 691 (11th Cir. 1983), the Eleventh Circuit Court of Appeals stated,

> As De Luna has been construed, the defendant's attorney has a clear duty
> to comment on a co-defendant's silence only when those comments are
> necessary to avoid real prejudice to the defendant. . . .  Real prejudice
> occurs only if the defenses offered by the defendant and the co-defendant
> are antagonistic and mutually exclusive.

Id. at 694-95 (citations omitted); see also United States v. Baggett, 455 F.2d 476, 477

(5th Cir. 1972); United States v. Wilson, 451 F.2d 209, 215 (5th Cir. 1971).  Defendant's

conclusory allegations do not establish that a severance should be granted for possible

infringement of one of his trial rights.

The second category mandating a severance, that is, preventing the jury from

making a reliable judgment, applies generally to three situations. "First, severance is

mandated where compelling evidence that is not admissible against one or more of the

co-defendants is to be introduced against another co-defendant." Blankenship, 382

F.3d at 1123. However, this situation does not involve the mere disparity in the quality

or amount of evidence introduced against one or more defendants and only applies

where there is a minimal chance that limiting instructions will provide adequate relief.

See Baker, 432 F.3d at 1236 (holding that "a defendant does not suffer 'compelling

prejudice simply because much of the evidence at trial is applicable only to his

27

codefendants,' . . . even when the disparity is 'enormous'") (quoting Schlei, 122 F.3d at 984).

In support of his argument for severance on this basis, Defendant Williams contends that evidence of his co-Defendants' involvement in other pain clinics - or pill mills - and the prior criminal history of co-Defendants Randy and Larry Webman, if introduced by the Government, will unduly prejudice him due to the "spill-over" impact of this evidence. [Doc. 89 at 4-5]. He contends that he is entitled to a separate trial to avoid a jury improperly considering such evidence against him. [Id. at 5]. The former Fifth Circuit Court of Appeals has considered and rejected the same argument made by Defendant Williams in this case. In United States v. Davis, 546 F.2d 617 (5th Cir. 1977), the defendants contended "that they were prejudiced by the admission of the prior importation schemes of" a co-defendant. Id. at 620. The court, rejecting the defendants' claim of prejudice, stated, "Our court has held that the admission of past misconduct of some defendants does not dictate a severance to protect the other co-defendants from an inference of guilt by association." Id. (citing United States v. Perez, 489 F.2d 51, 67 (5th Cir. 1973) ("It is further asserted by some appellants that the criminal records of their co-defendants below were prejudicial to their defense and should have been sufficient to warrant a severance. Similar grounds have generally

28

been rejected. . . .   These grounds have been held insufficient even if the prior convictions were for similar offenses."")); accord United States v. Walton, 2011 WL 3665145, at *5 (E.D. La. August 19, 2011) ("the Fifth Circuit has stated that, 'evidence of the reputation or past crimes of one co-defendant, although clearly inadmissible against the other co-defendants, does not ordinarily justify severance'") (quoting United States v. Rocha, 916 F.2d 219, 228 (5th Cir. 1990)); United States v. Brown, 894 F. Supp. 1150, 1157 (N.D. Ill. 1995) ("Severance is not required . . . when the prosecution introduces evidence of a co-defendant's past criminal record unless the defendant can show that actual prejudice will result.").   "Rather[, the court has] relied on careful instructions at the time such evidence is admitted to protect co-defendants in a . . . trial from the risk of guilt transference."   Davis, 546 F.2d at 620; see also United States v. Ramirez, 426 F.3d 1344, 1352 (11th Cir. 2005) ("Ramirez did not meet his burden to show compelling prejudice that the judge's first limiting instruction to the jury, regarding the evidence of [co-defendant] Quinones's prior acts and their lack of relevance to Ramirez, was ineffectual or that the jury could not make an individualized determination as to his guilt or innocence.").   Defendant is not entitled to severance based on this argument.

Severance is also mandated upon a showing of prejudice "in an extremely narrow range of cases in which the sheer number of defendants and charges with different standards of proof and culpability, along with the massive volume of evidence, makes it nearly impossible for a jury to juggle everything properly and assess the guilt or innocence of each defendant independently."   Blankenship, 382 F.3d at 1124. Defendant does not argue that a severance should be granted on this basis.  [Doc. 89]. And, "[f]inally, severance is required . . . where one defendant is being charged with a crime that, while somehow related to the other defendants or their overall criminal scheme, is significantly different from those of the other defendants."  Id. at 1125. Defendant also does not argue that this is a factor to consider in granting him a severance.  [Doc. 89].

Finally, as stated by the Supreme Court in Zafiro, "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts."   113 S. Ct. at 939.   If compelling prejudice is established at any point in time, this discretion may be exercised by the trial court before or even during trial. See United States v. Pedrick, 181 F.3d 1264, 1272 (11th Cir. 1999) (based on its continuing duty to grant a severance when compelling prejudice is demonstrated, trial court granted a severance of a defendant during the course of trial);

30

AO 72A
(Rev.8/82)

United States v. Kopituk, 690 F.2d 1289, 1316 (11th Cir. 1982) ("[T]he court fulfilled its 'continuing duty at all stages of the trial to grant a severance if prejudice does appear.'") (quoting Schaffer v. United States, 80 S. Ct. 945, 948 (1960)). The Supreme Court in Zafiro specifically noted that even if prejudice is shown or the risk of prejudice is high, severance is not required and that "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." 113 S. Ct. at 938. All of these decisions are left to the sound discretion of the trial court to address if any situation involving prejudice may arise during trial. However, at this stage in the proceedings, the court finds that Defendant has not established a basis for granting a Rule 14 severance.[7]

## II.    Conclusion

For these reasons, the court **RECOMMENDS** that Defendant Williams' motion [Doc. 89] for severance be **DENIED**.

---

[7]Because the court determined that Defendant had not demonstrated compelling prejudice requiring a severance, the court did not address Defendant's argument that judicial economy is not a factor in this case weighing against granting his motion. [Doc. 89 at 6]. However, given the nature of the charges in this case, the court does not see how it would be possible to try Defendant Williams in a separate trial without duplicating the evidence that is introduced to try the co-Defendants. The court agrees with the Government's summary of the adverse impact of separate trials on judicial economy. [Doc. 106 at 10-11].

AO 72A
(Rev.8/82)

## Conclusion

For the foregoing reasons and cited authority, the court **GRANTS** the motions [Docs. 93, 97] for a bill of particulars and finds that the Government has provided the information sought as outlined in the Government's response to the bill particulars and the court **RECOMMENDS** that Defendants Larry and Randy Webman's motions [Docs. 91, 98] to dismiss and to strike surplusage be **DENIED** and that Defendant Williams' motion [Doc. 89] for a severance be **DENIED**.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, declared Ready for Trial as to all Defendants.

**SO ORDERED AND RECOMMENDED THIS 6TH DAY OF JANUARY, 2014**.


JANET F. KING
UNITED STATES MAGISTRATE JUDGE