**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| LARRY WEBMAN, | : | MOTION TO VACATE |
|     Movant, | : | 28 U.S.C. § 2255 |
| | : | |
|     v. | : | CRIMINAL INDICTMENT NO. |
| | : | 1:13-CR-0025-SCJ-JFK-1 |
| UNITED STATES OF AMERICA, | : | |
|     Respondent. | : | CIVIL FILE NO. |
| | : | 1:16-CV-4080-SCJ-JFK |

**UNITED STATES MAGISTRATE JUDGE'S**
**FINAL REPORT AND RECOMMENDATION**

Movant has filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct his

federal sentence entered in this Court under the above criminal docket number.  The

matter is before the Court on the motion to vacate [303], Respondent's response [315],

and Movant's reply [325].  For the reasons discussed below, Movant's motion to

vacate and a certificate of appealability (COA) are due to be denied.

**I.**     **Background**

The grand jury for the Northern District of Georgia indicted Movant on a

conspiracy to distribute controlled substances, six controlled-substances offenses, and

a conspiracy to launder money.  (First Superseding Indictment, ECF No. 133).

Represented by Darryl B. Cohen and Johnna A. Lee, Movant pleaded guilty to counts

one and eight, the controlled substances and money laundering conspiracies.  (Guilty

Plea and Plea Agreement, ECF No. 222-1; Plea Hr'g Tr., ECF No. 311). The Court imposed a total 120-month term of imprisonment. (J., ECF No. 275). The record does not show that Movant appealed.

Movant now raises a collateral challenge "based on claims of ineffective assistance of counsel" (1) for failing to object to the two-level sentencing enhancement for possession of a firearm, (2) for providing incorrect advice on the plea agreement and inadequately arguing that the government should have filed a U.S.S.G. 5K1.1 motion in order to avoid breaching the plea agreement, and (3) for failing to object to the sentencing disparity between Movant's sentence and co-defendant Dr. George Williams's sentence. (Mot. to Vacate at 5-20, ECF No. 303).[1] For relief, Movant seeks a removal of the two-level sentence enhancement for possession of a firearm and otherwise seeks a reduction of his sentence. (Id. at 2, 20-21).

The government responds that Movant's grounds fail and construes Movant to assert that his guilty plea was involuntary. (Resp't Resp. at 1-3, ECF No. 315). The Court does not construe Movant's grounds to include a claim that his guilty plea was involuntary. Movant states in his motion to vacate that he seeks a reduction of his

---

[1] Movant presents his grounds as a., b., and Sentencing Disparity. The Court accedes to Movant's presentation of his grounds and not the government's restatement of those grounds.

2

sentence.  (Mot. to Vacate at 20-21).  In presenting his grounds in his initial motion, Movant nowhere states that he seeks to invalidate his guilty plea and proceed to trial on all eight counts.  (See id. at 9-18).

In his reply, however, Movant now asserts that his guilty plea was involuntary because counsel misadvised him that he would be eligible for the Residential Drug Abuse Program (RDAP) (and an earlier release based on his participation in RDAP) and because the government allegedly, and erroneously, promised that he would receive a sentence of less than 108 months, (Mov't Reply at 4-9, ECF No. 325).  Although Movant's newly added ground appears to be untimely, in light of Respondent's earlier construction of Movant's grounds, the Court shall address Movant's newly added claim that his guilty plea was involuntary.

## II.   **28 U.S.C. § 2255 Standard**

Section 2255 of Title 28 allows a district court to vacate, set aside, or correct a federal sentence that was imposed in violation of the Constitution or laws of the United States or was imposed by a court without jurisdiction, exceeds the maximum sentence authorized by law, or is otherwise subject to collateral attack.  28 U.S.C. § 2255.  Collateral relief, however, is limited.  "Once [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally

3

convicted," United States v. Frady, 456 U.S. 152, 164 (1982), and the § 2255 movant

bears the burden to establish his right to collateral relief, Rivers v. United States, 777

F.3d 1306, 1316 (11th Cir.), cert. denied, _ U.S. _, 136 S. Ct. 267 (2015).

Collateral review of a claim that could have been raised on direct appeal, but

was not, is foreclosed unless the movant can show cause and prejudice for his default

or a miscarriage of justice based on actual innocence.  McKay v. United States, 657

F.3d 1190, 1196 (11th Cir.  2011) (citing Lynn v. United States, 365 F.3d 1225, 1234

(11th Cir. 2004)).[2]  Section 2255 relief "is reserved for transgressions of constitutional

rights and for that narrow compass of other injury that could not have been raised in

---

[2]"[T]o show cause for procedural default, [a movant] must show that some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal" or that the matter was not raised because of ineffective assistance of counsel.  Lynn, 365 F.3d at 1235; see also Reece v. United States, 119 F.3d 1462, 1468 (11th Cir. 1997) (holding that, absent an "objective factor external to the defense" as cause, the movant must show that the default was caused by ineffective assistance of counsel (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)) (internal quotation marks omitted)).  If a petitioner shows cause, he also must show prejudice – that the error complained of "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  Reece, 119 F.3d at 1467 (emphasis in original) (quoting Frady, 456 U.S. at 170) (internal quotation marks omitted).  To make a credible showing of actual innocence, "a movant 'must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt' in light of . . . new evidence of innocence."  McKay, 657 F.3d at 1196 (alteration in original) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).

4

direct appeal and would, if condoned, result in a complete miscarriage of justice."
Lynn, 365 F.3d at 1232 (quoting Richards v. United States, 837 F.2d 965, 966 (11th Cir. 1988)) (internal quotation marks omitted); see also Massaro v. United States, 538 U.S. 500, 505-09 (2003) (holding that a constitutional claim of ineffective assistance of counsel generally is properly raised on collateral review in order to allow for adequate development and presentation of relevant facts).

"An evidentiary hearing is not required when 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (quoting § 2255). That is the case here, as shown in the discussion below.

## III.   **Discussion**

### A.   **Additional Background**

As stated above, Movant was charged with count one, conspiracy to distribute controlled substances, and count eight, conspiracy to launder money, along with six controlled-substances offenses.  (First Superseding Indictment).  Count one – the controlled substances conspiracy – charges that "[d]uring the course and in furtherance of the conspiracy, [Movant] and [co-defendant Randy Webman] hired armed security guards to monitor the customers at the clinics.  The security guards directed customers

5

to wait outside in their cars to avoid attracting the attention of law enforcement." (Id. at 11-12).

In his plea agreement, Movant admitted that he was in fact guilty of the crimes charged in counts one and eight and acknowledged and agreed that the Court could impose up to the statutory maximum sentences of twenty years on each of counts one and eight and that no one could predict his sentence at that time. (GuiltyPlea and Plea Agreement at 1, 3-4). The government agreed that it would dismiss the remaining counts against Movant, that it would not to bring any additional charges related to the charges to which Movant was pleading guilty, that it would recommend that Movant receive an adjustment of up to three levels for acceptance of responsibility, and that it would not use against Movant any previously unknown information that Movant provided as part of cooperation. (Id. at 5, 7, 10-11). The government agreed to recommend a 108-month term of imprisonment. (Id. at 13). The government also agreed that, if it determined that Movant's cooperation qualified as substantial assistance, it would recommend a downward departure under U.S.S.G. § 5K1.1.[3] (Id. at 11-12). The parties agreed (1) that "the determination as to whether [Movant had]

---

[3]Section 5K1.1 states that the court may depart from the guidelines if the government files a motion stating that the defendant has provided substantial assistance.

provided 'substantial assistance' rest[ed] solely with the Government[,]" that the government would not recommend a sentence lower than 96 months, and that the final decision would be up to the Court. (Id. at 12). Movant also agreed to waive his right to appeal or collaterally attack his conviction and sentence, reserving the right to appeal an upward departure from the guidelines range or a cross appeal and reserving claims of ineffective assistance of counsel. (Id. at 17-18). Movant and the government agreed that, other than the plea agreement, there were no other agreements, promises, representations, or understandings between Movant and the government. (Id. at 19).

At the May 6, 2015, plea hearing, the government reviewed the plea agreement and stated that Movant knew (1) that it rested solely with the government to determine whether he had provided substantial assistance and to request a downward departure, (2) that the government would not recommend a sentence of below 96 months, and (3) that a final decision would be up to the Court. (Plea Hr'g Tr. at 13). Movant agreed that the government's presentation was correct. (Id. at 15). The government also reviewed the appeal waiver, and the Court specifically questioned Movant on whether he understood that he was giving up his right to appeal or collaterally attack his sentence, and Movant stated that he understood. (Id. at 14, 21-22). Movant, under oath, told the Court that no one had made him any promises other than those in the plea

7

agreement to induce him to plead guilty. (<u>Id.</u> at 15, 22). The Court accepted Movant's guilty plea. (<u>Id.</u> at 28).[4]

Movant's Presentence Investigation Report (PSR) shows (1) that Movant's criminal history category of I includes a Florida conviction for a scheme to defraud and a federal conviction for mail fraud and interstate transportation of stolen property, (2) that Movant's offense level was 43, and (3) that his guidelines range was life. (PSR ¶¶ 252, 253 and Part D; Sentencing Tr. at 2, ECF No. 301). Movant's offense level included a two-level enhancement under U.S.S.G. § 2D1.1(b)(2) based on the possession of a gun by the clinic's security guard Douglas Bearden.[5] (PSR ¶ 232).[6] Movant did not object to that enhancement. (<u>See</u> Sentencing Tr. at 4).[7]

---

[4]Approximately two months later, on July 14, 2015, co-defendants Liz Gaiten and Dr. Williams pleaded guilty. (Dr. Williams's Guilty Plea and Plea Agreement, ECF No. 241-1); Gaiten's Guilty Plea and Plea Agreement, <u>United States v. Gaiten</u>, No. 1:15-cr-0258-SCJ-1 (N.D. Ga. Feb. 3, 2016).

[5]On October 2013, the government gave notice that Douglas Bearden was an unindicted co-conspirator. (<u>See</u> Resp't Resp. at 5 n.3).

[6]Absent the two-level enhancement under § 2D1.1(b)(2), Movant's total offense level would have been 41, yielding a guidelines range of 324 to 405 months, far above the sentence he received. (PSR ¶¶ 231-49).

[7]Mr. Page A. Pate, counsel for co-defendant Dr. Williams objected to the same two-level enhancement for Dr. Williams. (Williams's Sentencing Mem. at 2-3, ECF No. 267). Counsel objected that the security guard was not an indicted co-conspirator and was not knowingly involved in the drug conspiracy. (<u>Id.</u>). The Court stated,

8

At Movant's sentencing on the morning of January 21, 2016, Movant stated, among other things, "we did not have any intention whatsoever to do anything at all that would violate any type of medical board regulations" and the operations were "very different than from what I would think would be an illegal drug operation[, b]ut I guess it does have similarities in some areas." (Id. at 7, 12).  Movant's counsel asked the Court in imposing sentence to consider, among other things, that Dr. Williams had apparently been offered a six-year (60-month) sentence whereas the government had offered to recommend a nine-year (108-month) sentence for Movant.[8]  (Minute Entry, ECF No. 274; Sentencing Tr. at 15).   Counsel also asked the Court to consider

---

> The way I look at that is that it's part of it. . . . I understand you all are saying it doesn't relate, but in all due respect to you, Mr. Pate, I think it does relate to the security officer being there, the large number of people there.  They are more or less protecting them, the money, protecting them from abuse or whatever with the money for these illegal transactions, drug transactions. Well, I won't want say transactions but illegal acts going on.

(Williams's Sentencing Tr. at 4, ECF No. 288).  The Court overruled the objection. (Id. 4-5).

[8]Dr. Williams, who pleaded guilty to one count, had no previous criminal convictions and a guidelines range of 168 to 210 months.  (See Williams's J., ECF No. 281; Williams's Sentencing Tr. at 3, 9, 13, 28, 36).  The Court imposed Dr. Williams's sentence – an 84-month term of imprisonment – on the afternoon of January 21, 2016. (Minute Entry, ECF No. 279; Williams's Sentencing Tr. at 3, 36).

9

Movant's assistance to the government and "the fact that he said I really didn't know I was doing anything wrong but I realized I was and I am taking responsiblity for that. And he has done that the entire time. He has never once said to us that I want a trial. He has at all times said I will plead guilty." (Sentencing Tr. at 17).

The government informed the Court that, although Movant had submitted to numerous debriefings, the government had determined that he had not provided substantial assistance and that a 5K1.1 motion would not be filed. The government explained as follows – "[T]he government had not anticipated using [Movant] as a trial witness in this case. And I will also note that the positions that [Movant] has taken . . . I find contrary to being a witness for the prosecution." (Id. at 17, 19). The government also stated as follows –

> Your honor, the government's recommendation is as follows: . . . we actually agreed to a sentence recommendation in the plea agreement that was entered back in May of 2015. The government agreed to recommend a sentence of 108 months. Essentially that would be 108 months on count one and 108 months on count eight to run concurrently in this particular case. That does create sort of a very large variance from what's in the presentence investigation report. I can tell you that the government, in its negotiations with [Movant], considered again his age, as he has noted, and conserving resources, the government's resources, the Court's resources in terms of avoiding a very lengthy trial in reaching this 108-month recommendation. That's to the imprisonment section.

In terms of the supervised release, the government's recommendation would be ten years of supervised release. . . . The reason for such a significant supervised release recommendation is because I believe, and I think your honor would agree, that 108 months is a very generous recommendation from the government considering all of the sort of 3553(a) factors that I have described thus far.  I think it's very generous. And again, most of that is because of, again, the conservation of resources and taking into account [Movant's] age.

For that reason, because it's so generous in terms of the imprisonment, I think that – and because his sort of, his dealings when he has not been in jail have been questionable, we think that ten years of supervised release on the back end should make up for the lower imprisonment sentence.

(Sentencing Tr. at 27-28).  The Court commented that the government had laid out an argument for more than 108 months.  (Id. at 28).  Counsel for the government responded that the history and characteristics of Movant would "urge no lower than 108 months" and explained as follows –

I mean 108 months is generous and for that reason we think that the ten years on the back end . . . is appropriate.

So I would say that 108 months' imprisonment, ten years' supervised release, not only is that urged by the 3553(a) factors, it also reflects the seriousness of this particular offense, particularly the ten years' supervised release. It will promote respect for the law, provide a just punishment for [Movant] here, a 67-year-old male.  I'd like to think, I would hope that it would afford adequate deterrence, although the way we have seen these cases, we have a lot of this going on.  You know, at [Movant's] age, being in prison for 108 months, that should hopefully protect the public.  We have heard from a substance abuse professional

11

> that he probably does require some drug abuse treatment, substance abuse education treatment while he is in prison, and hopefully he will get that during the 108-month sentence. So, again, that's the government's recommendation, your honor.

(Id. at 29).  Movant's counsel asked the Court to consider imposing a sentence of less than 108 months.  (Id. at 31).

The Court stated that it disagreed with Movant's and the government's counsel, that it had considered the volume of pills given out ($2.5 million annually) and Movant's prior federal conviction, and that it originally had considered a "pretty high" sentence but would take into consideration Movant's age.  (Id. at 32).  The Court imposed a below guidelines sentence, a total 120-month term of imprisonment and a total three-year term of supervised release.  (Id.).

## B.   Challenge to Guilty Plea

Movant asserts that his guilty plea was involuntary because counsel misadvised him that he would be eligible for RDAP (and an earlier release based on his participation in RDAP) and because the government erroneously promised that he would receive a sentence of less than 108 months.  (Mov't Reply at 4-9).

An appeal waiver "does *not* preclude claims brought pursuant to § 2255 that challenge the validity of the defendant's plea or the appeal waiver based on the

12

ineffective assistance of counsel." <u>Patel v. United States</u>, 252 F. App'x 970, 974 (11th Cir. 2007) (emphasis in original).  Under the Sixth Amendment, a defendant has the right to "reasonably effective" legal assistance.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).   To show constitutionally ineffective assistance of counsel, a petitioner must establish that (1) counsel's representation was deficient and (2) counsel's deficient representation prejudiced him.  <u>Id.</u> at 690-92; <u>Bottoson v. Moore</u>, 234 F.3d 526, 532 (11th Cir. 2000) (stating that court may resolve an ineffective assistance claim based on either prong).  Under the first prong, a petitioner must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690.  Under the second prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694.  The habeas petitioner has the burden of affirmatively proving prejudice, and a "conceivable effect on the outcome of the proceedings" does not show prejudice.  <u>Wood v. Allen</u>, 542 F.3d 1281, 1309 (11th Cir. 2008) (quoting <u>Strickland</u>, 466 U.S. at 693) (internal quotation marks omitted).

13

To succeed on a claim that a guilty plea was obtained in violation of the Sixth Amendment right to counsel, a movant must show that "(1) counsel's advice was deficient; and (2) 'but for counsel's errors, [there is a reasonable probability that] he would not have pleaded guilty and would have insisted on going to trial.'" Lynch v. Sec'y, Fla. Dep't of Corr., 776 F.3d 1209, 1218 (11th Cir. 2015) (quoting Hill v. Lockhart, 474 U.S. 52, 58-59 (1985)), cert. denied, _ U.S. _, 136 S. Ct. 798 (2016). A movant's "bare allegation that he would not have pleaded guilty is insufficient to establish prejudice[.]" Roach v. Roberts, 373 F. App'x 983, 985 (11th Cir. 2010). "[A] petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Diveroli v. United States, 803 F.3d 1258, 1263 (11th Cir. 2015) (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)) (internal quotation marks omitted).

Movant fails to show that there is a reasonable probability that the outcome would have been different had counsel provided different advice on Movant's RDAP eligibility or if Movant had not believed, based on the alleged misrepresentations by the government, that he would receive a sentence of less than 108 months.[9] Movant

---

[9]Technically, Movant's guilty plea challenge based on the alleged misrepresentations by the government is procedurally defaulted as Movant could have, but did not, raise the issue on direct appeal. Movant fails to show cause or prejudice

14

does not suggest that he would in fact have been willing to (1) reject the plea agreement, (2) forfeit the government's agreement to recommend an acceptance of responsibility adjustment, (3) forfeit the government's agreement not to bring any additional charges, (4) proceed to trial on all eight counts (with the government free to use any statement or other information provided by Movant during his cooperation), and (5) face a guidelines range of life without the government's agreement to recommend a 108 month term of imprisonment.[10]   Movant's newly added claim fails.

## C.  Ground One

In his first ground for relief, Movant argues that counsel's failure to object to the two-level enhancement for possession of a firearm by Bearden was deficient because Bearden (1) was not charged as a co-conspirator, (2) did not possess the gun in furtherance of the conspiracy, and (3) although a jury could conclude that Bearden knew about the drug conspiracy, which "would not be unusual at a clinic[,]" there was no meeting of minds such that Bearden was a conspiracy member.  (Mot. to Vacate at

---

or a fundamental miscarriage of justice to overcome his default.  Further, as the discussion in this section shows, his claim otherwise is without merit.

[10]Notably, at sentencing, counsel informed the Court as follows – "He has never once said to us that I want a trial.  He has at all time said I will plead guilty." (Sentencing Tr. at 17).  Movant did not attempt to contradict counsel.  (Id.).

6-9).  Movant further argues that counsel was deficient for informing Movant that he would be eligible for RDAP, which the possession enhancement foreclosed.  (Id.). Movant states that he was prejudiced because his sentence was enhanced and because he was not entitled to RDAP benefits.  (Id. at 9).

Respondent argues that Movant's sentencing-enhancement claim is barred because he failed to raise it on direct appeal and because he entered into a valid appeal waiver and cannot now challenge his sentence via an ineffective assistance of counsel claim.   (Resp't Resp. at 28-29).   Respondent further argues that the two-level enhancement was properly based on the gun possessed by Bearden, an unindicted co-conspirator.  (Id. at 29 (citing, *inter alia*, United States v. Nino, 967 F.2d 1508, 1514 (11th Cir. 1992) (J. Edmondson)).

Movant replies that United States v. Otero, 890 F.2d 366, 367 (11th Cir. 1989) (*per curiam*, J. Vance, J. Clark, and J. Edmondson), requires that the possessor be charged as a co-conspirator for application of § 2D1.1(b) and that Otero is binding because it is the older precedent.

When a guilty plea is otherwise valid, a provision that waives the right to review is valid and enforceable if the district court has "specifically questioned the defendant about the provision during the plea colloquy, or . . . it is manifestly clear from the

16

record that the defendant fully understood the significance of the waiver." United States v. Hardman, 778 F.3d 896, 899 (11th Cir. 2014) (quoting United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001)) (internal quotation marks omitted). When "[t]he plain language of the agreement" informs a defendant that he is "waiving a collateral attack on his sentence . . . , the sentence-appeal waiver precludes a § 2255 claims based on ineffective assistance . . . ." Williams v. United States, 396 F.3d 1340, 1342 (11th Cir. 2005).  To the extent, however, that a waiver excludes ineffective assistance of counsel claims, Strickland applies.

"The [two-level] enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  U.S.S.G. § 2D1.1, Application Note 11.

> The U.S.S.G. § 2D1.1(b)(1) enhancement may be applied to a convicted defendant when a firearm is possessed by a co-conspirator if the government proves by a preponderance of the evidence that: "(1) the possessor of the firearm was a co-conspirator; (2) the possession was in furtherance of the conspiracy; (3) the defendant was a member of the conspiracy at the time of possession; and (4) the co-conspirator possession was reasonably foreseeable by the defendant." United States v. Gallo, 195 F.3d 1278, 1284 (11th Cir.1999) (emphasis omitted).  To prove that the possession was in furtherance of the conspiracy, the

17

> government need show only that the firearm was present at the site of the charged offense, unless it was "clearly improbable that the weapon was connected with the offense." United States v. Fields, 408 F.3d 1356, 1359 (11th Cir. 2005) (quotation marks and citation omitted). Possession may be proved through either actual or constructive possession. See United States v. Hernandez, 433 F.3d 1328, 1333 (11th Cir.2005). "Constructive possession exists when a [person] has ownership, dominion, or control over an object itself or dominion or control over the premises in which the object is concealed." Id. (quotation marks and citation omitted).

United States v. Lane, 340 F. App'x 575, 577-78 (11th Cir. 2009). The government must show "that the firearm was present at a place where acts in furtherance of the conspiracy took place" and must show possession. Id. at 578.

The court in Otero stated, "Sentence enhancement for a co-conspirator's firearms possession is proper if three conditions are met: first, the possessor must be charged as a co-conspirator . . . ." Otero, 890 F.2d at 367. In Nino, the Eleventh Circuit Court of Appeals analyzed Otero as follows –

> In [Otero], this court decided that Sentencing Guideline § 2D1.1(b)(1) permits sentence enhancement based on firearm possession by a co-conspirator when three requirements are satisfied: (1) the possessor must be charged as a co-conspirator; (2) the co-conspirator must be found to have possessed the firearm in furtherance of the conspiracy; and (3) the defendant who is to receive the enhanced sentence must have been a member of the conspiracy at the time of the firearm possession. Id. at 367. Konja argues his enhancement was improper because neither Kalasho nor Askar were charged co-conspirators.[] We disagree.

18

At the outset, we note that nowhere in the <u>Otero</u> opinion is it said that enhancement is allowable only if the three conditions set out in the opinion are met.  The <u>Otero</u> court faced a case in which certain facts existed and held that, given the facts before the court, enhancement was permitted by the guidelines.  The words of <u>Otero</u>, like the words of every judicial opinion, must be read in the context of the particular facts of the case. . . .

The Otero reasoning avoids artificial sentence enhancement for firearm possession when the weapon is actually or constructively possessed by a person outside the conspiracy (for example, an undercover agent, confidential informant, or other non-conspirator).  <u>See</u> <u>also</u> <u>United States v. Missick</u>, 875 F.2d 1294, 1301-02 (7th Cir.1989) (reversing weapon-possession enhancement where firearms were possessed only by recipients of cocaine and recipients were not charged as co-conspirators).  Such a rule is necessary because firearm possession by those who are in contact with-but not members of-a drug-trafficking conspiracy is not an act in furtherance of the conspiracy.  <u>See</u> <u>Pinkerton</u>, 328 U.S. at 647 [11] . . . (conspirator's overt act must be in furtherance of conspiracy for purposes of co-conspirator liability for substantive offense); U.S.S.G. § 1B1.3, commentary n. 1 (where conduct is neither within scope of defendant's agreement nor reasonably foreseeable in connection with criminal activity defendant agreed to jointly undertake, conduct not included in establishing offense level).

In this case, Kalasho died before the conspiracy ended, and Askar cooperated with the government in exchange for immunity. But these events in no way negate their participation in the conspiracy or their use of firearms to further the group's mission. Given <u>Otero</u>'s facts, <u>Otero</u>'s holding remains good law in this circuit; but the rules of co-conspirator liability as explained in <u>Pinkerton</u> and the Sentencing Guidelines do not require that the firearm possessor be a *charged* co-conspirator when that co-conspirator dies or is otherwise unavailable for indictment.  To the

---

[11]<u>Pinkerton v. United States</u>, 328 U.S. 640 (1946).

19

extent, if any, the <u>Otero</u> opinion's words – as distinguished from the <u>Otero</u> decision – suggest otherwise, those words are dicta and are not the law.

<u>Nino</u>, 967 F.2d at 1513-14; <u>see</u> <u>also</u> <u>United States v. Saftchick</u>, 335 F. App'x 870, 875 (11th Cir. 2009) (finding that <u>Otero</u> was satisfied if the possessor was a co-conspirator and the possession was "in furtherance of the conspiracy and reasonably foreseeable . . . , regardless of whether [the co-conspirator] was indicted in this case"); <u>United States v. Luiz</u>, 102 F.3d 466, 469 (11th Cir. 1996) (finding that district court did not err in attributing to defendants the gun possession of non-indicted co-conspirator); <u>United States v. Louis</u>, 967 F.2d 1550, 1553 (11th Cir. 1992) (same).[12]

Here, the waiver was reviewed during the plea hearing, (Plea Hr'g Tr. at 14, 21-22), and the Court questioned Movant regarding the waiver and ascertained that he understood the waiver, (<u>id.</u> at 21-22). The undersigned finds that Movant's waiver of

---

[12]Other circuits have held similarly. <u>See</u> <u>United States v. Blake</u>, No. 15-6114, 2017 WL 2459871, at *3 (6th Cir. June 7, 2017) ("Possession of a firearm by a 'co-conspirator' – not a co-defendant – constitutes possession under § 2D1.1(b)(1) so long as the co-conspirator's possession is reasonably foreseeable by the defendant. . . . And Blake admitted as a stipulation to her plea agreement that she knew some staff members carried firearms. The government also proved at sentencing that Blake hired the guards to assist in the conspiracy."); <u>United States v. Valdez</u>, 480 F. App'x 281, 283 (5th Cir. 2012) (affirming two-level increase based on unindicted co-conspirators possession of a weapon, and stating, "[s]uch possession is ordinarily foreseeable because firearms are tools of the drug trafficking trade").

his right to collateral review of his sentence is valid and enforceable.  The court in Williams was persuaded that a sentence-appeal waiver precluded claims based on ineffective assistance at sentencing "particularly since a contrary result would permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless."  Williams, 396 F.3d at 1342.  Although the parties' exception here appears to render meaningless Movant's waiver of his right to challenge his sentence, Movant explicitly agreed with the government that he did not waive his right to raise ineffective assistance of counsel claims.  See Hardman, 778 F.3d at 900 ("The language of a plea agreement should be given its ordinary and natural meaning unless the parties indicate otherwise.").

Movant's claim of ineffective assistance, however, otherwise fails because there is no reasonable probability that an objection would have changed the application of the two-level enhancement.  First, Eleventh Circuit precedent, as explained by the Honorable Judge Edmondson – who joined in the Otero opinion and wrote the Nino opinion – does not require under § 2D1.1(b)(1) that the co-conspirator in possession be indicted.  See discussion supra.  Second, this Court expressly found that the gun was possessed in furtherance of the conspiracy – protecting the defendants while they

committed illegal acts and protecting the money.  (Dr. Williams's Sentencing Tr. at 4; see supra n.7).  Third, Movant admits that a reasonable jury could have found that Bearden knew about the conspiracy.  See United States v. Moran, 778 F.3d 942, 960 (11th Cir. 2015) (stating that membership in conspiracy may be shown by circumstantial evidence and inference and that the conspirator knew "the essential nature of the conspiracy"), cert. denied, _ U.S. _, 136 S. Ct. 268 (2015).  Additionally and significantly, the Court rejected the same objection when it was raised by counsel for Dr. Williams, and there is no reasonable probability that the Court would have found differently had the objection been raised at Movant's sentencing.

Moreover, Movant pleaded guilty to count one of the conspiracy which charges that Movant "[d]uring the course and in furtherance of the conspiracy . . . hired *armed* security guards to monitor the customers at the clinics."  (Superceding Indictment at 11 (emphasis added)).  Arguably, Movant constructively possessed the "gun" that he purposely hired.  United States v. Thompson, 466 F. App'x 838, 843 (11th Cir. 2012) (stating that, for the purpose of constructive possession, "'The defendant may exercise . . . dominion and control either directly or through others.' [United States v. Gunn, 369 F.3d 1229, 1235 (11th Cir. 2004)]").

22

As a final matter on ground one, Movant cannot show prejudice based on counsel's failure to properly inform him on RDAP eligibility.  Had counsel properly advised Movant that he would not be eligible for RDAP, it would not have changed Movant's RDAP eligibility.  And, as discussed earlier, Movant does not suggest that with different advice he would not have pleaded guilty.  Ground one fails.

## D.   Ground Two

Movant contends that counsel was ineffective because he (1) inadequately argued that the government should have filed a 5K1.1 motion and (2) incorrectly advised Movant on the plea agreement as to the recommended 108-month sentence and the possibility of a 5K1.1 motion.[13]  (Mot. to Vacate at 9, 11).  Movant asserts that counsel should have obtained testimony from co-defendants Dr. Williams or Gaiten (and/or their attorneys) to show whether they pleaded guilty based on Movant's willingness to testify against them and, thus, established the government's duty to file a 5K1.1 motion and its breach of the plea agreement by failing to do so.  (Id. at 10).  In arguing that counsel was ineffective, Movant states that the government breached

---

[13]Movant again argues in ground two that counsel was ineffective for misadvising him on his RDAP eligibility.  (Mot. to Vacate at 15).  The claim is addressed in ground one.

23

the plea agreement (1) by failing to file a 5K1.1 motion[14] when it had indicated Movant

could receive as low as "4 to 5 years" and had promised "96 months" of imprisonment

if Movant fully cooperated, (id. at 15-16), and (2) by implying at sentencing that 108

months was inadequate and not objecting when the Court imposed a greater sentence.

(Id. at 9-18).[15]

The government responds that it did not breach the plea agreement and that

counsel was not ineffective for failing to pursue a meritless argument.  (Resp't Resp.

at 22-26).  The government asserts that it agreed to file a 5K1.1 motion only if it

determined that Movant provided substantial assistance and that it determined Movant

did not do so.  (Id.).  The government further states that it recommended a 108-month

sentence, as agreed.  (Id. at 26-27).

The standard in Strickland, discussed earlier, applies.  To the degree that Movant

raises an independent claim that the government breached the plea agreement, it fails.[16]

---

[14]Movant refers to the motion as a 5K1.1 motion, a § 3553(e) motion, a Rule 35(b) motion.  (Mot. to Vacate at 11, 16).

[15]In his reply, Movant asserts, as a separate claim, that the government breached the plea agreement.  (Mov't Reply at 8-13).

[16]Movant's challenge to the government's alleged breach of the guilty plea, as an independent claim, is procedurally defaulted as he raises it for the first time in these § 2255 proceedings.  See Genge v. United States, 279 F. App'x 897, 898 (11th Cir.

24

A review of the record shows no discernable breach of the plea agreement by the government either in presenting its recommendation that the Court impose a 108-month sentence or in declining to move for a downward departure. See supra III. A. The government credibly explained why it recommended a 108-month sentence (far below the guidelines range of life), both acknowledging the seriousness of Movant's crimes and giving consideration to Movant's age. Further, the parties had agreed that it was *solely* up to the government to determine whether Movant had provided substantial assistance.[17]  Absent any breach by the government, counsel was not ineffective for failing to adequately assert that the government breached the plea agreement by failing to file a 5K1.1 motion.

---

2008) (applying procedural default rules to § 2255 claim that the government had breached the plea agreement).  Movant fails to show cause or prejudice or a fundamental miscarriage of justice to overcome his default.  Further, his claim is without merit.

[17]Generally, when the filing of a substantial-assistance motion is left within the government's discretion, the court reviews the failure to file a substantial-assistance motion "only if the refusal was based on an unconstitutional motive, such as racial or religious discrimination." United States v. Moore, 136 F. App'x 284, 286-87 (11th Cir. 2005) (citing Wade v. United States, 504 U.S. 181, 186 (1992), and United States v. Alvarez, 115 F.3d 839, 841 (11th Cir. 1997)).  There is no indication of an unconstitutional motive here.

25

Additionally, Movant fails to show that the prospect of his testimony induced the guilty pleas of Dr. Williams and/or Gaiten and warranted a 5K1.1 motion. Movant's argument – that counsel was ineffective for failing to obtain testimony to demonstrate that Dr. Williams and/or Gaiten pleaded guilty based on Movant's willingness to testify against them – fails because Movant, now proceeding as his own counsel, does not come forward with the alleged testimony that he asserts counsel was ineffective for failing to obtain.  See Hill v. Moore, 175 F.3d 915, 923 (11th Cir. 1999) (holding that absent proffer of evidence, the petitioner could not show prejudice based on counsel's failure to introduce such evidence); Gilreath v. Head, 234 F.3d 547, 552 n.12 (11th Cir. 2000) (stating that if a petitioner complains of counsel's failure to obtain witnesses, he must "show that witnesses not presented at trial actually were available and willing to testify at time of trial").

The record also does not support a claim that counsel was deficient in advising Movant on the plea agreement as to the recommended 108-month sentence and the possibility of a 5K1.1 motion.  The record establishes that Movant was aware that no-one could promise a particular sentence, that there were no promises other than those contained in the plea agreement, that filing a 5K1.1 motion was solely within the government's discretion, and that the Court could impose a sentence of up to twenty-

26

years on each count.  See supra III. A.  Movant fails to establish that any additional or
more emphatic advice by counsel – that the Court was not bound by the 108-month
recommendation and that the 5K1.1 determination lay solely with the government –
would have had a reasonable probability of changing the outcome, either as to
Movant's decision to accept the plea offer or as to the final sentence that Movant
received.  Ground two fails.

### E.  **Ground Three**

Movant argues that counsel was ineffective for failing to object to the sentencing
disparity between Movant's sentence and Dr. Williams's sentence.  (Mot. to Vacate
at 18-20).

Respondent argues, among other things, that Movant's sentencing claim is
barred because he failed to raise it on direct appeal and because he entered into a valid
appeal waiver and cannot now challenge his sentence via an ineffective assistance of
counsel claim.  (Resp't Resp. at 28-31).

Although Movant waived his right to challenge his sentence, to the extent that
his waiver does not cover his ground three claim of ineffective sentencing counsel,
under Strickland, his claim otherwise fails.  Counsel could not object to a sentence
disparity based on Dr. Williams's sentence, which had not yet been imposed.

27

Nonetheless, counsel asked the Court, in imposing Movant's sentence, to consider the lenient sentence that it appeared Dr. Williams might receive.  It is not clear what else counsel could have done.  Further, the disparity, which became apparent *after* Movant was sentenced, was based on widely different guidelines ranges.  Movant's guidelines range was life.  Dr. Williams's guidelines range was 168 to 210 months.  <u>See</u> <u>supra</u> III. A.  Movant fails to show that a more fervent argument by counsel on a potential disparity would have had a reasonable chance of lowering Movant's sentence.  Ground three fails.

## IV.  <u>Certificate of Appealability (COA)</u>

Under Rule 11 of the Rules Governing § 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  The Court will issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The applicant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  <u>Melton v. Sec'y, Fla. Dep't of Corr.</u>, 778

F.3d 1234, 1236 (11th Cir.) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted), <u>cert. denied</u>, _ U.S. _, 136 S. Ct. 324 (2015).

The undersigned recommends that a COA should be denied because it is not reasonably debatable that Movant has failed to carry his burden of demonstrating that he is entitled to collateral relief.  If the Court adopts this recommendation and denies a COA, Petitioner is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing § 2254 Cases in the United States District Courts.

## V.   <u>Conclusion</u>

For the reasons stated above,

**IT IS RECOMMENDED** that Movant's motion [303] to vacate, set aside, or correct his federal sentence be **DENIED** and that a COA be **DENIED**.

The Clerk of Court is **DIRECTED** to withdraw the referral of this § 2255 motion to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED and DIRECTED**, this 17th day of July, 2017.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

29