**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| LARRY WEBMAN, | : | MOTION TO VACATE |
|    Movant, | : | 28 U.S.C. § 2255 |
| | : | |
|    v. | : | CRIMINAL INDICTMENT NO. |
| | : | 1:13-CR-0025-SCJ-JFK-1 |
| UNITED STATES OF AMERICA, | : | |
|    Respondent. | : | CIVIL FILE NO. |
| | : | 1:16-CV-4080-SCJ-JFK |

**ORDER ADOPTING MAGISTRATE JUDGE'S
FINAL REPORT AND RECOMMENDATION**

The matter is before the Court on Magistrate Judge Janet F. King's Final Report

and Recommendation ("R&R") [332], which recommends denying Movant's 28

U.S.C. § 2255 motion to vacate [303] and a certificate of appealability, and on

Movant's objections thereto [341].

In reviewing a Magistrate Judge's Report and Recommendation, the district

court "shall make a de novo determination of those portions of the report or specified

proposed findings or recommendations to which objection is made." 28 U.S.C.

§ 636(b)(1). "Parties filing objections to a magistrate's report and recommendation

must specifically identify those findings objected to. Frivolous, conclusive, or general

objections need not be considered by the district court." United States v. Schultz, 565

F.3d 1353, 1361 (11th Cir. 2009) (quoting Marsden v. Moore, 847 F.2d 1536, 1548

(11th Cir. 1988)) (internal quotation marks omitted).  Absent objection, the district judge "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), and "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation," Fed. R. Civ. P. 72, advisory committee note, 1983 Addition, Subdivision (b).

## I.   <u>Discussion</u>[1]

The grand jury for the Northern District of Georgia charged Movant with count one, conspiracy to distribute controlled substances, and count eight, conspiracy to launder money, along with six controlled-substances offenses. (First Superseding Indictment, ECF No. 133.)  The conspiracy involved the illegal distribution of drugs through a pain clinic, and count one charges, *inter alia*, that "[d]uring the course and in furtherance of the conspiracy, [Movant] and [co-defendant Randy Webman] hired armed security guards to monitor the customers at the clinics.  The security guards directed customers to wait outside in their cars to avoid attracting the attention of law enforcement." (<u>Id.</u> at 11-12.)

---

[1]   The Court's summary of the proceedings reflects much of the Magistrate Judge's language in the Report and Recommendation, with certain adjustments made in the course of *de novo* review.

Movant pleaded guilty to counts one and eight, the controlled substances and money laundering conspiracies. (Guilty Plea and Plea Agreement, ECF No. 222-1.) The government agreed to recommend a 108-month term of imprisonment. (Id. at 13.) The government also agreed that, if it determined that Movant's cooperation qualified as substantial assistance, it would recommend a downward departure under U.S.S.G. § 5K1.1.[2] (Id. at 11-12.) The parties agreed that "the determination as to whether [Movant had] provided 'substantial assistance' rest[ed] solely with the Government." (Id. at 12.)

At the May 6, 2015, plea hearing, the government reviewed the plea agreement and stated that Movant knew that it rested solely with the government to determine whether he had provided substantial assistance and to request a downward departure. (Plea Hr'g Tr. at 13, ECF No. 311.) Movant agreed that the government's

---

[2] In these proceedings, Movant refers to the motion as a 5K1.1 motion, a 18 U.S.C. § 3553(e) motion, a Fed. R. Crim. P. 35(b) motion. (Mot. to Vacate at 11, 16.) Section 5K1.1 states, "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." Movant is construed to refer to a 5K1.1 motion when he refers to a motion to reduce his sentence.

AO 72A
(Rev.8/82)

presentation was correct.  (<u>Id.</u> at 15.)  The Court accepted Movant's guilty plea.  (<u>Id.</u> at 28.)[3]

Movant's Presentence Investigation Report (PSR) shows (1) that Movant's criminal history category of I includes a Florida conviction for a scheme to defraud and a federal conviction for mail fraud and interstate transportation of stolen property, (2) that Movant's offense level was 43, and (3) that his guidelines range was life.  (PSR ¶¶ 252, 253 and Part D; Sentencing Tr. at 2, ECF No. 301.)  Movant's offense level included a two-level enhancement under U.S.S.G. § 2D1.1(b)(2) based on the possession of a gun by the clinic's security guard Douglas Bearden, an unindicted co-conspirator.  (PSR ¶ 232.)[4]  Movant did not object to that enhancement.  (<u>See</u> Sentencing Tr. at 4.)[5]

---

[3]  Approximately two months later, on July 14, 2015, co-defendants Liz Gaiten and Dr. George Williams pleaded guilty.  (Dr. Williams's Guilty Plea and Plea Agreement, ECF No. 241-1); Gaiten's Guilty Plea and Plea Agreement, <u>United States v. Gaiten</u>, No. 1:15-cr-0258-SCJ-1 (N.D. Ga. Feb. 3, 2016).

[4]  Absent the two-level enhancement under § 2D1.1(b)(2), Movant's total offense level would have been 41, yielding a guidelines range of 324 to 405 months, far above the sentence he received.  (PSR ¶¶ 231-49.)

[5]  Counsel for co-defendant Dr. Williams objected to the same two-level enhancement for Dr. Williams.  (Williams's Sentencing Mem. at 2-3, ECF No. 267.) Counsel objected that the security guard was not an indicted co-conspirator and was not knowingly involved in the drug conspiracy.  (<u>Id.</u>)  The Court stated,

AO 72A
(Rev.8/82)

At Movant's sentencing on the morning of January 21, 2016, Movant's counsel asked the Court in imposing sentence to consider, among other things, that Dr. Williams had apparently been offered a six-year (60-month) sentence whereas the government had offered to recommend a nine-year (108-month) sentence for Movant.[6] (Minute Entry, ECF No. 274; Sentencing Tr. at 15.) Counsel asked the Court to consider Movant's assistance to the government and stated "I submit to the Court it was only because my client rolled over and told the truth at his debriefings that convinced, helped convince Dr. Williams to enter a plea." (Sentencing Tr. at 14-15, 17.) Counsel stated, "I have respectfully asked the government to give substantial

---

> The way I look at that is that it's part of it. . . . I understand you all are saying it doesn't relate, but in all due respect to you, Mr. Pate, I think it does relate to the security officer being there, the large number of people there. They are more or less protecting them, the money, protecting them from abuse or whatever with the money for these illegal transactions, drug transactions. Well, I won't want say transactions but illegal acts going on.

(Id. at 4.) The Court overruled the objection. (Id. 4-5.)

[6] Dr. Williams, who pleaded guilty to one count, had no previous criminal convictions and a guidelines range of 168 to 210 months. (See Williams's J., ECF No. 281; Williams's Sentencing Tr. at 3, 9, 13, 28, 36.) The Court imposed Dr. Williams's sentence – an 84-month term of imprisonment – on the afternoon of January 21, 2016. (Minute Entry, ECF No. 279; Williams's Sentencing Tr. at 3, 36.)

5

assistance, they disagree. Certainly the Court can take that into consideration with its sentence . . . ." (Id. at 15).

The government informed the Court that the government had determined that Movant had not provided substantial assistance and that a 5K1.1 motion would not be filed. (Id. at 17, 19.) The government explained as follows –

> [T]he government had not anticipated using [Movant] as a trial witness in this case. And I will also note that the positions that [Movant] has taken in his objections to the PSR I find contrary to being a witness for the prosecution. I mean specifically he has taken the position that he believed that the visits were adequate, the visits with Dr. Williams - excuse me - were adequate according to the Georgia Medical Board Guidelines. And as it pertains to Ms. Gaitan, [Movant] says that he fully believed that she was licensed to perform the tasks for which she was hired.

(Id. at 18.) The government also stated as follows –

> Your honor, the government's recommendation is as follows: . . . we actually agreed to a sentence recommendation in the plea agreement that was entered back in May of 2015. The government agreed to recommend a sentence of 108 months. Essentially that would be 108 months on count one and 108 months on count eight to run concurrently in this particular case. That does create sort of a very large variance from what's in the presentence investigation report. I can tell you that the government, in its negotiations with [Movant], considered again his age, as he has noted, and conserving resources, the government's resources, the Court's resources in terms of avoiding a very lengthy trial in reaching this 108-month recommendation. That's to the imprisonment section.

6

In terms of the supervised release, the government's recommendation would be ten years of supervised release. . . . The reason for such a significant supervised release recommendation is because I believe, and I think your honor would agree, that 108 months is a very generous recommendation from the government considering all of the sort of 3553(a) factors that I have described thus far. I think it's very generous. And again, most of that is because of, again, the conservation of resources and taking into account [Movant's] age.

For that reason, because it's so generous in terms of the imprisonment, I think that – and because his sort of, his dealings when he has not been in jail have been questionable, we think that ten years of supervised release on the back end should make up for the lower imprisonment sentence.

(Sentencing Tr. at 27-28.) The Court commented that the government had laid out an argument for more than 108 months. (Id. at 28.) Counsel for the government responded that the history and characteristics of Movant would "urge no lower than 108 months" and explained as follows –

I mean 108 months is generous and for that reason we think that the ten years on the back end . . . is appropriate.

So I would say that 108 months' imprisonment, ten years' supervised release, not only is that urged by the 3553(a) factors, it also reflects the seriousness of this particular offense, particularly the ten years' supervised release. It will promote respect for the law, provide a just punishment for [Movant] here, a 67-year-old male. I'd like to think, I would hope that it would afford adequate deterrence, although the way we have seen these cases, we have a lot of this going on. You know, at [Movant's] age, being in prison for 108 months, that should hopefully protect the public. We have heard from a substance abuse professional

7

that he probably does require some drug abuse treatment, substance abuse education treatment while he is in prison, and hopefully he will get that during the 108-month sentence. So, again, that's the government's recommendation, your honor.

(Id. at 29.)

Movant's counsel again asked the Court to consider Movant's cooperation and to impose a sentence of less than 108 months . (Id. at 30-31.) The Court stated that Movant's willingness to testify obviously had some effect, but that only Dr. Williams would know. (Id.) The Court then stated that it disagreed with Movant's and the government's counsel, that it had considered the volume of pills given out ($2.5 million annually) and Movant's prior federal conviction, and that it originally had considered a "pretty high" sentence but would take into consideration Movant's age. (Id. at 32.) The Court imposed a below guidelines sentence, a total 120-month term of imprisonment and a total three-year term of supervised release. (Id.) The record does not show that Movant appealed.

Movant now raises three grounds for collateral relief based on ineffective assistance of counsel (1) for failing to object to the two-level sentencing enhancement for possession of a firearm, (2) for providing incorrect advice on the plea agreement and inadequately arguing that the government should have filed a 5K1.1 motion in

8

order to avoid breaching the plea agreement, and (3) for failing to object to the sentencing disparity between Movant's sentence and co-defendant Dr. Williams's sentence. (Mot. to Vacate at 5-20, ECF No. 303.) In his reply Movant also asserts a claim that his guilty plea was invalid. (Mov't Reply at 4-9, ECF No. 325.) The Magistrate Judge found that all grounds failed. (R&R at 12-28, ECF No. 332.) Movant now objects on Grounds One through Three, as discussed below.

## A. <u>Ground One</u>

In his first ground for relief, Movant argues that counsel's failure to object to the two-level enhancement for possession of a firearm by Bearden was deficient because Bearden (1) was not charged as a co-conspirator, (2) did not possess the gun in furtherance of the conspiracy, and (3) although a jury could conclude that Bearden knew about the drug conspiracy, which "would not be unusual at a clinic[,]" there was no meeting of minds such that Bearden was a conspiracy member. (Mot. to Vacate at 6-9.) Movant argues that <u>United States v. Otero</u>, 890 F.2d 366, 367 (11th Cir. 1989), requires that the possessor be charged as a co-conspirator for application of § 2D1.1(b). (Mov't Reply at 15-16.)

The Magistrate Judge determined that Movant's ineffective assistance claim failed because there was no reasonable probability that an objection would have

AO 72A
(Rev.8/82)

changed the application of the two-level enhancement. (R&R at 15-23.) The

Magistrate Judge reasoned as follows –

> First, Eleventh Circuit precedent, as explained by the Honorable Judge
> Edmondson – who joined in the <u>Otero</u> opinion and wrote the <u>Nino</u>[7]
> opinion[,] does not require under § 2D1.1(b)(1) that the co-conspirator
> in possession be indicted. . . . Second, this Court expressly found [during
> Dr. Williams's sentencing] that the gun was possessed in furtherance of
> the conspiracy – protecting the defendants while they committed illegal
> acts and protecting the money. . . . Third, Movant admits that a
> reasonable jury could have found that Bearden knew about the
> conspiracy. <u>See</u> <u>United States v. Moran</u>, 778 F.3d 942, 960 (11th Cir.
> 2015) (stating that membership in conspiracy may be shown by
> circumstantial evidence and inference and that the conspirator knew "the
> essential nature of the conspiracy"), <u>cert. denied</u>, _ U.S. _, 136 S. Ct. 268
> (2015). Additionally and significantly, the Court rejected the same
> objection when it was raised by counsel for Dr. Williams, and there is no
> reasonable probability that the Court would have found differently had
> the objection been raised at Movant's sentencing.
>
> Moreover, Movant pleaded guilty to count one of the conspiracy
> which charges that Movant "[d]uring the course and in furtherance of the
> conspiracy . . . hired *armed* security guards to monitor the customers at
> the clinics." (Superceding Indictment at 11 (emphasis added)).
> Arguably, Movant constructively possessed the "gun" that he purposely
> hired. <u>United States v. Thompson</u>, 466 F. App'x 838, 843 (11th Cir.
> 2012) (stating that, for the purpose of constructive possession, "'The
> defendant may exercise . . . dominion and control either directly or
> through others.' [<u>United States v. Gunn</u>, 369 F.3d 1229, 1235 (11th Cir.
> 2004)]").

---

[7]  <u>United States v. Nino</u>, 967 F.2d 1508, 1514 (11th Cir. 1992) (discussing
<u>Otero</u>).

AO 72A
(Rev.8/82)

(R&R at 21-22.)

Movant objects to the Magistrate Judge's interpretation of Otero and argues that Otero requires that the co-conspirator in possession be charged unless he is unavailable for indictment. (Objs. at 3; ECF No. 341.) Movant otherwise does not identify a finding by the Magistrate Judge to which he objects but argues generally that Bearden was not charged, that Bearden was not a member of the conspiracy, and that the Court did not explicitly find at Movant's sentencing (as opposed to Dr. Williams's sentencing) that Bearden possessed the gun in furtherance of the conspiracy. (Id. at 3-4.)

The standard applicable to Grounds One through Three requires that, to show constitutionally ineffective assistance of counsel, a movant must establish that (1) counsel's representation was deficient and (2) counsel's deficient representation prejudiced him. Strickland v. Washington, 466 U.S. 668, 690-92 (1984).

> The U.S.S.G. § 2D1.1(b)(1) enhancement may be applied to a convicted defendant when a firearm is possessed by a co-conspirator if the government proves by a preponderance of the evidence that: "(1) the possessor of the firearm was a co-conspirator; (2) the possession was in furtherance of the conspiracy; (3) the defendant was a member of the conspiracy at the time of possession; and (4) the co-conspirator possession was reasonably foreseeable by the defendant." United States v. Gallo, 195 F.3d 1278, 1284 (11th Cir.1999) (emphasis omitted).

11

<u>United States v. Lane</u>, 340 F. App'x 575, 577-78 (11th Cir. 2009).

On *de novo* review, the Court agrees with the Magistrate Judge's conclusion that <u>Otero</u> does not require that the co-conspirator in possession be charged. The court in <u>Otero</u> stated, "Sentence enhancement for a co-conspirator's firearms possession *is proper* if three conditions are met: first, the possessor must be charged as a co-conspirator; second, the co-conspirator must be found to have been possessing a firearm in furtherance of the conspiracy; and third, the defendant who is to receive the enhanced sentence must have been a member of the conspiracy at the time of the firearms possession." <u>Otero</u>, 890 F.2d at 367 (emphasis added). The court in <u>Otero</u> did not state that a sentence enhancement would be proper *only* if those three conditions were met. <u>United States v. Delgado</u>, 56 F.3d 1357, 1372 (11th Cir. 1995) (stating that <u>Otero</u> "identified three conditions that support a sentence enhancement for a coconspirator's firearm possession" but did not hold that an enhancement was allowable *only* if those conditions were met); <u>Nino</u>, 967 F.2d at 1514 ("[N]owhere in the <u>Otero</u> opinion is it said that enhancement is allowable *only* if the three conditions set out in the opinion are met." (emphasis added)). Further, the use of the wording "charged as a co-conspirator" in <u>Otero</u>, 890 F.2d at 367, has been held to be dicta. <u>Nino</u>, 967 F.2d at 1514. "The Otero court was not faced with the question whether a

12

defendant could be sentenced based on the possession of a firearm by an uncharged or unnamed co[-]conspirator because the co-conspirators in that case were named and charged as co-conspirators." <u>United States v. Luiz</u>, 102 F.3d 466, 469 (11th Cir. 1996).

Movant also now complains that the Court did not address at *his* sentencing whether Bearden possessed the gun in furtherance of the conspiracy. The matter was not explicitly addressed by the Court at Movant's sentencing because Movant did not object or bring the matter into question. At this point, on collateral review, it is Movant's burden to demonstrate that, had the objection been raised, there is a reasonably probability that it would have succeeded. Movant has not met that burden. There is no reasonable probability that an argument by counsel that Bearden did not possess the gun in furtherance of the conspiracy would have succeeded (1) when Movant, by pleading guilty, admitted that he hired armed security guards in furtherance of the conspiracy and (2) when it is apparent that the purpose of the armed security was to protect the clinic personnel during their illegal activities and to protect the money derived from the illegal acts. Additionally, Bearden was present as a security guard at the clinic, Movant admits that a reasonable jury could have found that Bearden knew about the conspiracy, and Movant fails to show that, had counsel

13

objected to the enhancement, the government would have been unable to show that Bearden was a co-conspirator.[8]  Ground One fails.

**B.     Ground Two**

Movant contends that counsel was ineffective because he (1) inadequately argued that the government should have filed a 5K1.1 motion and (2) incorrectly advised Movant on the plea agreement as to the recommended 108-month sentence and the possibility of a 5K1.1 motion.  (Mot. to Vacate at 9, 11.)  Movant asserts that counsel should have obtained testimony from co-defendants Dr. Williams or Gaiten (and/or their attorneys) to show whether they pleaded guilty based on Movant's willingness to testify against them and, thus, establish the government's duty to file a 5K1.1 motion and its breach of the plea agreement by failing to do so.  (Id. at 10.) In arguing that counsel was ineffective, Movant states that the government breached

---

[8]  On collateral review, the movant is no longer presumed innocent with the burden of proof being assigned to the government; it is the movant's burden to establish his right to relief.  See Dist. Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52, 68-69 (2009) ("At trial, the defendant is presumed innocent and may demand that the government prove its case beyond reasonable doubt.  But '[o]nce a defendant has been . . . convicted of the offense for which he was charged, the presumption of innocence disappears.'" (quoting Herrera v. Collins, 506 U.S. 390, 399 (1993)));  Rivers v. United States, 777 F.3d 1306, 1316 (11th Cir.) ("[Movant] bears the burden to prove the claims in his § 2255 motion."), cert. denied, _ U.S. _, 136 S. Ct. 267 (2015).

AO 72A
(Rev.8/82)

the plea agreement (1) by failing to file a 5K1.1 motion, (id. at 15-16), and (2) by

implying at sentencing that 108 months was inadequate and not objecting when the

Court imposed a greater sentence. (Id. at 9-18.)

The Magistrate Judge determined as follows –

> To the degree that Movant raises an independent claim that the government breached the plea agreement, it fails.[9]  A review of the record shows no discernable breach of the plea agreement by the government either in presenting its recommendation that the Court impose a 108-month sentence or in declining to move for a downward departure. . . . The government credibly explained why it recommended a 108-month sentence (far below the guidelines range of life), both acknowledging the seriousness of Movant's crimes and giving consideration to Movant's age. Further, the parties had agreed that it was *solely* up to the government to determine whether Movant had provided substantial assistance.[10]  Absent any breach by the government, counsel

---

[9]  The Magistrate Judge also found that such claim was procedurally defaulted and that Movant had not overcome his default.

[10]   The Magistrate Judge noted (1) that, when the filing of a substantial-assistance motion is left within the government's discretion, the court reviews the failure to file a substantial-assistance motion "only if the refusal was based on an unconstitutional motive, such as racial or religious discrimination," United States v. Moore, 136 F. App'x 284, 286-87 (11th Cir. 2005) (citing Wade v. United States, 504 U.S. 181, 186 (1992), and United States v. Alvarez, 115 F.3d 839, 841 (11th Cir. 1997)), and (2) that there was no indication of an unconstitutional motive in Movant's case.  The Court agrees.  The government adequately explained its reasoning, (Sentencing Tr. at 18), and Movant's conclusory assertion that the Government lied about its need for Movant's testimony does not show otherwise. (See Objs. at 7.)

AO 72A
(Rev.8/82)

was not ineffective for failing to adequately assert that the government breached the plea agreement by failing to file a 5K1.1 motion.

Additionally, Movant fails to show that the prospect of his testimony induced the guilty pleas of Dr. Williams and/or Gaiten and warranted a 5K1.1 motion. Movant's argument – that counsel was ineffective for failing to obtain testimony to demonstrate that Dr. Williams and/or Gaiten pleaded guilty based on Movant's willingness to testify against them – fails because Movant, now proceeding as his own counsel, does not come forward with the alleged testimony that he asserts counsel was ineffective for failing to obtain. See Hill v. Moore, 175 F.3d 915, 923 (11th Cir. 1999) (holding that absent proffer of evidence, the petitioner could not show prejudice based on counsel's failure to introduce such evidence); Gilreath v. Head, 234 F.3d 547, 552 n.12 (11th Cir. 2000) (stating that if a petitioner complains of counsel's failure to obtain witnesses, he must "show that witnesses not presented at trial actually were available and willing to testify at time of trial").

The record also does not support a claim that counsel was deficient in advising Movant on the plea agreement as to the recommended 108-month sentence and the possibility of a 5K1.1 motion. The record establishes that Movant was aware that no-one could promise a particular sentence, that there were no promises other than those contained in the plea agreement, that filing a 5K1.1 motion was solely within the government's discretion, and that the Court could impose a sentence of up to twenty-years on each count. . . . Movant fails to establish that any additional or more emphatic advice by counsel – that the Court was not bound by the 108-month recommendation and that the 5K1.1 determination lay solely with the government – would have had a reasonable probability of changing the outcome, either as to Movant's decision to accept the plea offer or as to the final sentence that Movant received. Ground two fails.

(R&R at 24-27.)

16

Movant objects to the Magistrate Judge's finding that the government did not breach the plea agreement and asserts that the government acted in bad faith by not filing a 5K1.1 motion and by implying that 108 months was not enough. (Objs. at 6.) Movant (1) objects to the Magistrate Judge's finding that he failed to show that his willingness to testify induced Dr. Williams's or Gaiten's guilty pleas when the Court indicated that Movant *had* induced their pleas and (2) asserts that counsel should have obtained affidavits from Dr. Williams and Gaiten. (Id. at 7-9.)[11]

The Court agrees that there is no evidence that the government breached the plea agreement. Filing a 5K1.1 motion was solely within the government's discretion. It would have been fruitless for Movant's counsel to assert a governmental breach on the matter, and counsel performed reasonably by asking the Court to otherwise consider Movant's assistance/cooperation in imposing sentence. Further, the government did not breach the plea agreement by allegedly "implying" that a 108-month sentence was insufficient. The government credibly explained that it found

---

[11] Movant also asserts – somewhat ambiguously in the middle of presenting argument on Ground Two – that counsel was deficient in advising him "to plea agreement as to the recommended 108- month sentence and possibility of a 5K1.1 motion, where the government did not have intent to honor that agreement." (Objs. at 8.) The Court discerns no viable argument that provides cause for sustaining an objection to the Magistrate Judge's recommendation that Movant fails to show that his guilty plea was invalid. (See R&R at 12-15.)

17

Movant's crimes to be serious but that it was recommending a 108-month sentence (far below the guidelines range of life) and a lengthy term of supervised release, based in large part on consideration of Movant's age. The Court finds no breach *or* bad faith by the government. Moreover, as explained by the Magistrate Judge, any claim that the government breached the plea agreement is procedurally defaulted.

The remainder of Movant's objection also fails. The Court did not find at sentencing that Movant's willingness to testify induced Dr. Williams's or Gaiten's guilty pleas. The Court specifically stated that only Dr. Williams (and by implication Gaiten) would know the reason for their decision to plead guilty. (Sentencing Tr. at 30-31.) Although Movant asserts that counsel was ineffective for failing to obtain affidavits from Dr. Williams or Gaiten, Movant has not demonstrated that such affidavits could have been obtained or that they would have been favorable to his claim. Ground Two fails.

## C.   <u>Ground Three</u>

In Ground Three, Movant argues that counsel was ineffective for failing to object to the sentencing disparity between Movant's sentence and Dr. Williams's sentence. (Mot. to Vacate at 18-20.) Movant asserts that Dr. Williams received less time than Movant, who cooperated but "was similar[ly] situated to Dr. Williams in

18

every other aspect." (Id. at 18-19.) Movant then asserts that Dr. Williams was more culpable because he owned fifty-one percent of the company, was responsible for the medical aspects of the clinic, and wrote all the prescriptions. (Id. at 20.)

The Magistrate Judge found that Movant's claim failed under Strickland for the following reasons –

> Counsel could not object to a sentence disparity based on Dr. Williams's sentence, which had not yet been imposed. Nonetheless, counsel asked the Court, in imposing Movant's sentence, to consider the lenient sentence that it appeared Dr. Williams might receive. It is not clear what else counsel could have done. Further, the disparity, which became apparent *after* Movant was sentenced, was based on widely different guidelines ranges. Movant's guidelines range was life. Dr. Williams's guidelines range was 168 to 210 months. . . . Movant fails to show that a more fervent argument by counsel on a potential disparity would have had a reasonable chance of lowering Movant's sentence. Ground three fails.

(R&R at 27-28.)

Movant objects that the Magistrate Judge failed to consider the District Court's suggestion that the prospect of Movant testifying caused Dr. Williams to plead guilty and failed to consider that Dr. Williams was more culpable. (Objs. at 9-10.)

Movant does not demonstrate that counsel was deficient on this issue. The Magistrate Judge correctly pointed out that counsel could not have objected based on Dr. Williams's actual sentence, which had not yet been imposed, but that counsel

reasonably asked the Court to consider a lower sentence for Movant in light of the lenient sentence it appeared that Dr. Williams might receive. (See R&R at 9, 28.) Although not discussed by the Magistrate Judge in relation to Ground Three, counsel also argued for a lower sentence based on Movant's cooperation and his allegedly helping convince Dr. Williams to plead guilty. (See Sentencing Tr. at 15.) Movant fails to show any deficiency by counsel on the matter.

Additionally, had counsel argued that Movant should receive a lower sentence – based on his not owning fifty-one percent of the company and not performing medical aspects of the scheme, such as writing prescriptions – there is no reasonable probability that it would have changed the sentencing outcome. Movant and Randy Webman were the principal owners of PMMI, who managed, controlled, and supervised the day-to-day operations of PMMI; Movant was known as the owner of the clinic, and Dr. Williams prescribed controlled substances at Movant's direction. (PSR ¶¶ 13, 20, 21.) Ground Three fails.

## II. **Conclusion**

As stated above, Movant's Grounds One through Three fail. Otherwise, the Magistrate Judge's recommendation on Movant's challenge to his guilty plea and Movant's general objections – that do not specify a particular objectionable finding

20

by the Magistrate Judge – have been reviewed for clear error, and the Court finds none.

**IT IS ORDERED** that Plaintiff's objections [341] are overruled and that the Magistrate Judge's Report and Recommendation [332] is **ADOPTED** as the Order of the Court.

**IT IS ORDERED** that Movant's § 2255 motion and a certificate of appealability are **DENIED** and that this action is **DISMISSED**.

**IT IS SO ORDERED** this 2nd day of October, 2017.


s/Steve C. Jones
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)